917 F.2d 1162
 59 USLW 2287, 23 Collier Bankr.Cas.2d 1537,
20 Bankr.Ct.Dec. 1932, Bankr. L. Rep. P 73,669,
12 Employee Benefits Ca 2711
 In re Michael KINCAID; Sharon Kincaid, Debtors.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a corporation;
John Hancock Mutual Life Insurance Company,
Administrator, Appellants,
v.
Ronald A. WATSON, Trustee, Appellee.
 No. 89-35342.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 11, 1990.
Decided Oct. 25, 1990.
 
 Herbert H. Anderson, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for appellants.
 Ronald A. Watson, Portland, Or., for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before GOODWIN, Chief Judge, FLETCHER and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 John Hancock Mutual Life Insurance Company ("administrator") appeals the Bankruptcy Appellate Panel's ("BAP") judgment confirming the decision of the bankruptcy court. The bankruptcy court ordered the administrator to turn over to Ronald Watson ("trustee") funds held on behalf of the debtor, Sharon Kincaid ("Kincaid"), in an ERISA deferred salary plan. We reverse.
 
 BACKGROUND FACTS
 
 2
 Sharon Kincaid was employed by John Hancock Mutual Life Insurance Company ("Company"). The Company provided a 401(k)[1] Deferred Salary Plan ("Plan") in which its employees could choose to participate. Kincaid elected to participate in the Plan. The Plan contains an anti-alienation and anti-assignment provision as required by 29 U.S.C. Sec. 1056(d)(1), 26 U.S.C. Sec. 401(a)(13), and 26 C.F.R. Sec. 1.401(a)-13.
 
 
 3
 There are three types of contributions that may be made to the Plan. The first is a basic amount. The employee agrees that the Company will reduce by 2% the future compensation otherwise payable to the employee. The second is a supplemental amount. The employee agrees that the Company will further reduce future compensation up to 8%. Each of these amounts is then contributed to the Plan by the Company. The third is an amount which the Company contributes on a monthly basis and which is equal to half of the sum of the basic amount.
 
 
 4
 Kincaid declared bankruptcy on December 26, 1985. At the time of filing, she was still an employee of the Company and had the following interests in the Plan: $1,691.74 in basic contributions, $683.96 in supplemental contributions, and $836.03 in matching contributions.
 
 
 5
 Kincaid initially claimed an exemption in her bankruptcy schedules for her interest in the Plan. The trustee objected to her claim of exemption. Kincaid did not appear at the exemption hearing that was scheduled for July 14, 1986. Thereafter, the court entered an order sustaining the trustee's objection.
 
 
 6
 At the trustee's request, Kincaid applied for a withdrawal of contributions under the hardship provision of the Plan. The administrator denied the request for withdrawal. On June 19, 1987, the trustee filed a complaint for a turnover order against the administrator. The trustee's complaint sought to obtain the basic and supplemental contributions. The trustee did not seek to obtain the matching fund contributions.
 
 
 7
 The bankruptcy court subsequently conducted a hearing on the question, and rendered a judgment against the administrator. The administrator appealed. The BAP heard the appeal on May 19, 1988, and on March 16, 1989, it affirmed the bankruptcy court's judgment. The administrator appealed.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 8
 The bankruptcy court's jurisdiction is contested. We have jurisdiction pursuant to 28 U.S.C. Sec. 158(d).
 
 
 9
 We apply the same standard as the BAP in reviewing the bankruptcy court's decision. In re Herbert, 806 F.2d 889, 891 (9th Cir.1986). We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. Wein Air Alaska v. Bachner, 865 F.2d 1106, 1108 (9th Cir.1989).
 
 DISCUSSION
 I. Jurisdiction
 
 10
 The administrator claims that the trustee's action to recover the monies that represent Kincaid's interest in the Plan is merely an action to recover benefits, and is therefore preempted by ERISA. See 29 U.S.C. Sec. 1132(e)(1).
 
 
 11
 It is clear that this is true in clashes between ERISA and state law claims. See Davidian v. Southern California Meat Cutters Union and Food Employees Benefit Fund, 859 F.2d 134, 135 (9th Cir.1988) (nonbankruptcy breach of fiduciary duty claim preempted by ERISA). However, 29 U.S.C. Sec. 1144(d) expressly prohibits ERISA preemption of other federal laws. See In re Alagna, 107 B.R. 301, 306 n. 14 (Bankr.D.Colo.1989); In re the Bastian Co. Inc., 45 B.R. 717, 718 (Bankr.W.D.N.Y.1985); In re Goff, 706 F.2d 574, 587 (5th Cir.1983). Core proceedings are exclusively governed by federal bankruptcy law. Thus, if the trustee's action is a core proceeding, ERISA does not preempt 28 U.S.C. Sec. 157(b)(2), which confers jurisdiction upon the bankruptcy courts.
 
 
 12
 Section 157(b)(2) lists the core proceedings in bankruptcy. The trustee contends that his action seeks the turnover of property of the estate and, thus, is a core proceeding pursuant to section 157(b)(2)(E). The administrator claims that the trustee's action is not an attempt to obtain property of the estate. It asserts that Kincaid has no present right to her interest, as her interest in the Plan has not matured. Thus, it claims that the trustee's action is nothing more than an action to collect a future debt.
 
 
 13
 The administrator's position mischaracterizes the interest that it holds. The 401(k) Plan in this case is not a debt owed to Kincaid by the administrator. The Plan provides Kincaid a discrete account which holds a sum certain in which she has a present, vested interest. The Plan contains no provision by which Kincaid's interest could ever be distributed to other employees or revert to the employer. The administrator itself has no personal title to Kincaid's interest in the Plan. Instead, the money is merely being held in trust by the administrator on Kincaid's behalf. Thus, the trustee's action to obtain that interest is quite simply a proceeding to force the administrator to turn over something that belongs to the debtor.
 
 
 14
 The action in this case is, therefore, distinguishable from the actions brought by the trustees in the cases cited by the administrator. In those cases, the trustees were not seeking to obtain property of the debtor but were instead seeking to obtain property owed to the debtor, but belonging to a third party. Those actions could hardly be characterized as actions to obtain the property owned by the debtor, and were, therefore, not turnover proceedings. See Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50, 71-72, 102 S.Ct. 2858, 2872, 73 L.Ed.2d 598 (1982) (Chapter 11 debtor's "right to recover contract damages to augment its estate is 'one of private right, that is, of the liability of one individual to another under the [state] law as defined' "). Accord St. George Island, Ltd. v. Pelham, 104 B.R. 429, 432 (Bankr.N.D.Fla.1989) (actions to recover accounts receivable arising prepetition are non-core proceedings); In re Crabtree, 55 B.R. 130 (Bankr.E.D.Tenn.1985) (suit to enforce a promissory note is not a turnover proceeding); In re B & L Oil Co., 46 B.R. 731, 736 (Bankr.D.Colo.1985) (an action to recover damages resulting from a breach of contract action not yet adjudicated is not a turnover proceeding); In re Atlas Automation, 42 B.R. 246, 247 (Bankr.E.D.Mich.1984) (action to collect accounts receivable is not a turnover proceeding).
 
 
 15
 Moreover, as the BAP pointed out, "determining the nature and extent of property of the estate is also a fundamental function of a bankruptcy court.... [and] fundamental to the administration of a bankruptcy case." In re Kincaid, 96 B.R. 1014, 1017 (9th Cir. BAP 1989). Since an action to obtain property of the estate would necessarily involve a determination regarding "the nature and extent of property of the estate," the action would also be a matter "concerning the administration of the estate," and, therefore, a core proceeding. 28 U.S.C. Sec. 157(b)(2)(A). We hold that this is a core proceeding. Thus, the bankruptcy court had jurisdiction to decide the question.
 
 
 16
 II. Kincaid's Interest in the Plan is not Property of the Estate.
 
 
 17
 A. In General.
 
 
 18
 Property of the bankruptcy estate is property in which the debtor has "legal or equitable interest as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1). The only exceptions to this broad definition are sections 541(b) and 541(c)(2). The administrator contends that Kincaid's interest in the Plan is specifically excluded from property of the estate under section 541(c)(2). Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law " is not property of the estate. (Emphasis added).
 
 
 19
 The trustee relies upon In re Daniel, 771 F.2d 1352, 1360 (9th Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), in claiming that the term "applicable nonbankruptcy law" only applies to state spendthrift trusts. He argues that Kincaid's interest in the Plan is excluded only if it is found to be a spendthrift trust.
 
 
 20
 In Daniel, we held that "the phrase 'applicable nonbankruptcy law' in 11 U.S.C. Sec. 541(c)(2) was intended to be a narrow reference to state 'spendthrift trust' law and not a broad reference to all other laws, including ERISA and IRC, which prohibit alienation." Id. (Emphasis in original) (citing Goff, 706 F.2d at 582 (Code makes explicit "reference to 'federal laws' or pension laws, including ERISA, when federal as opposed to state law is the subject of the reference")).
 
 
 21
 Virtually every circuit that has considered the question has agreed that the debtor's interest in an ERISA pension or profit sharing plan is included in the bankruptcy estate unless the debtor's interest in the plan is considered a spendthrift trust under state law. See In re Lichstrahl, 750 F.2d 1488, 1490 (11th Cir.1985) (adopting Goff ); Goff, 706 F.2d at 582 (reaffirmed in In re Brooks, 844 F.2d 258, 261 (5th Cir.1988)). Accord In re Boon, 108 B.R. 697, 700 (Bankr.W.D.Mo.1989) (debtor's interest in ERISA plan may be excluded from bankruptcy estate if it qualifies as an enforceable spendthrift trust). Contra In re Moore, 907 F.2d 1476, 1477-78 (4th Cir.1990) (adopting literal reading of section 541(c)(2) and enforcing transfer restrictions normally enforceable under ERISA). Some circuits have gone so far as to automatically include the debtor's interest in the plan as property of the estate. See In re Graham, 726 F.2d 1268, 1272-73 (8th Cir.1984) (considering debtor's interest in ERISA plan as always property of the estate); Regan v. Ross, 691 F.2d 81, 86 (2d Cir.1982) (same).
 
 
 22
 Nevertheless, the administrator argues that it is no longer clear that a debtor's interest in an ERISA plan may be property of the estate. It cites the Supreme Court's decisions in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and Mackey v. Lanier Collections Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) as support for its assertion. In Pilot Life, the Court held that courts should read 29 U.S.C. Sec. 1144(a) broadly to encompass all actions relating to ERISA-regulated benefit plans. In Mackey, the Court reiterated the broad sweep of section 1144(a) in benefit plan disputes. The administrator argues that these holdings indicate that even in bankruptcy, state spendthrift law as applied to these plans should be preempted by ERISA.
 
 
 23
 That these cases affect our prior decision in Daniel is far from clear. Whatever the effect of ERISA may be on state law standing alone, it does not follow that ERISA affects bankruptcy law indirectly by affecting state spendthrift trust requirements. See In re Kaplan, 97 B.R. 572, 576 (9th Cir. BAP 1989). See also In re Hysick, 90 B.R. 770, 774 (Bankr.E.D.Pa.1988). Cf. In re Komet, 104 B.R. 799, 810-11 (Bankr.W.D.Tex.1989) (Mackey not relevant to property of the estate question but mandates that state area of exemptions is preempted). Rather, those requirements are adopted into the bankruptcy law for the purpose of offering protection to debtors. Given our determination in Daniel that neither ERISA nor the Internal Revenue Code can create an exclusion under 11 U.S.C. Sec. 541(c)(2), ERISA trusts must look to state spendthrift law for protection in the bankruptcy setting. No Supreme Court case has held to the contrary. We recognize a certain incongruity in the notion that only ERISA's anti-alienation provisions offer protection until bankruptcy, and only state spendthrift provisions do so in bankruptcy. The same might be said of the idea that some ERISA plan benefits are protected from creditors before bankruptcy and lose that protection upon bankruptcy. Yet, that is in accord with the great weight of authority and is the law of this Circuit.
 
 
 24
 Thus, the determination of whether the Plan is property of the estate depends upon whether the Plan is a spendthrift trust.
 
 
 25
 B. The Plan is a Spendthrift Trust.
 
 
 26
 It is well settled law in both Oregon and Massachusetts[2] that a settlor cannot create a spendthrift trust for his own benefit. See In re Cates, 73 B.R. 874, 875 (Bankr.D.Or.1987); State Street Bank and Trust Comp. v. Reiser, 7 Mass.App. 633, 389 N.E.2d 768, 771 (1979). Thus, the threshold inquiry in determining whether a plan is a spendthrift trust is whether the plan is self-settled.
 
 
 27
 Some courts have held that a plan is self-settled if an employee voluntarily participates in the plan. See Cates, 73 B.R. at 876 n. 3 (the settlor is the "[o]ne who furnishes the consideration (res) necessary for the creation of the trust"); In re Sanders, 89 B.R. 266, 270 (Bankr.S.D.Ga.1988) (court found self-settled trust where employee "voluntarily chose to participate thereby adopting the plan as his own"). That per se rule elevates form over substance given the variety of plans that exist in this area.
 
 
 28
 This is a case in point. Section 2.05 of the Plan expressly defines a participant as "an Employee who has made contributions to the Plan...." The Plan also states that an employee's participation in the Plan is voluntary. However, it cannot be disputed that a sine qua non of this type of plan is that the employee does not have the right to the funds contributed to the Plan at any time prior to their contribution. That is to say, the employee does not receive those funds and then choose whether to contribute them to the Plan. When the employee does agree to be a part of the Plan, it is only future (not past earned) compensation that is reduced. Moreover, the amount contributed never belongs to the employee; it comes directly from the employer. Indeed, once Kincaid had contracted with the Company for a lower salary, she had no right to a greater amount. She could not obtain the higher amount directly. It is true that the employer agreed to contribute a like amount to the trust. However, she was no more entitled to immediate receipt of that money than she would have been had she simply agreed to work for less for other reasons. We, therefore, hold that the trust was not self-settled.
 
 
 29
 The fact that the trust is not self-settled does not necessarily mean that it is a spendthrift trust. Courts also focus on "the amount of 'dominion and control' exercised by the debtor over the trust property" in deciding whether the plan sets up a spendthrift trust.[3] Kaplan, 97 B.R. at 577 (court found no spendthrift trust where employee was integrally involved in the decision-making process of the plan and was not restricted from drawing on the account). Cf. In re West, 81 B.R. 22, 25-26 (9th Cir. BAP 1987) (court found spendthrift trust where debtor had no direct control over any aspect of the plan and had very restricted access to the account). The administrator claims that this Plan is a spendthrift trust because it was created and is controlled by the Company, not the employee.
 
 
 30
 The Plan was clearly created by and is administered by the Company. Kincaid's control over her interest in the Plan is also severely limited. Under the Plan, Kincaid is entitled to distribution of her interest in the Plan upon death, attainment of age 59 1/2, disability, retirement, termination of employment or termination of the plan. Kincaid can only obtain funds from the Plan prior to the occurrence of one of these events pursuant to the loan or hardship provisions. Kincaid's access to funds through those provisions is solely within the discretion of the administrator.
 
 
 31
 Courts have disagreed as to whether the ability to gain access to an entire vested interest by the termination of employment is sufficient to destroy the spendthrift character of a plan. Some courts have determined that since the provision enables a debtor, by voluntary action, to invade the corpus of the trust, it is not a true spendthrift trust. See, e.g., In re Sildorff, 96 B.R. 859, 863 (C.D.Ill.1989); Sanders, 89 B.R. at 270. Others have determined that the ramifications of having to quit one's job in order to gain access to the corpus of the trust are sufficient to prevent the use and abuse of the access as a means of sheltering assets. See, e.g., Goff, 706 F.2d at 589; Hysick, 90 B.R. at 775; West, 81 B.R. at 25. We adopt the latter position. While it is true that termination of one's job is often in one's own hands, it would be a rather drastic step to take for the purpose of obtaining funds in the Plan. Indeed, one reason employers create these plans is to offer employees incentives not to quit. Thus, from the vantage point of the trust, this is much more like other random or unpurposive events which can affect the debtor. We find that this provision is not, by itself, sufficient to destroy the spendthrift character of the trust.
 
 
 32
 Courts are also divided on the question of whether the insertion of a loan provision, a hardship provision, or both in a trust destroys its spendthrift character. If the loan does not have to be repaid with interest, but is instead treated as a premature distribution of part of the corpus, then courts have been less willing to treat a plan as a spendthrift trust. See, e.g. Sildorff, 96 B.R. at 864. However, where the administrator is not obligated to make the loan and the loan has to be repaid with interest, courts have found that the fact that a plan contains a loan provision does not destroy its spendthrift character. See, e.g., Hysick, 90 B.R. at 776-77; West, 81 B.R. at 25.
 
 
 33
 In this case, the Plan allows Kincaid to borrow against her account. However, it requires that she repay the loan with interest, and specifically provides that "[t]his provision shall not be used as a means of distributing benefits before they otherwise become payable." Also, her ability to obtain the loan is solely within the discretion of the administrator. Thus, the Plan is easily distinguishable from plans in which the employee has unrestricted access to the corpus through use of a loan provision. See e.g., Alagna, 107 B.R. at 306; Kaplan, 97 B.R. at 578.
 
 
 34
 In addition, Kincaid may gain access to the corpus through the hardship provision. Again, this provision is discretionary and limited to specific sets of circumstances. The restrictive nature of Kincaid's access to the corpus through this provision is evidenced by the administrator's denial of her hardship petition in this case. Thus, this section does not destroy the spendthrift character of the Plan.
 
 
 35
 It is true that the Plan does not create the most restrictive spendthrift trust imaginable. However, the degree of the employee's control is far less than that of the employees in most of the cases where protection has not been found. The restrictions are sufficiently obstructive to create a spendthrift trust, and, therefore, we hold that the Plan is a spendthrift trust. We are confirmed in this position by the knowledge that it attenuates the clash between ERISA and bankruptcy law, and thus helps prevent our legal system from becoming a mere farrago of unrelated provisions.
 
 
 36
 Since the Plan is a spendthrift trust, Kincaid's interest in the Plan is not property of the estate.[4]
 
 CONCLUSION
 
 37
 The trustee's action is an action for the turnover of property of the estate. Therefore, the bankruptcy court had jurisdiction to decide the trustee's right to Kincaid's interest in the Plan. However, the bankruptcy court and the BAP mischaracterized Kincaid's interest when they found that the Plan was not a spendthrift trust. We reverse that finding and hold that the Plan is a spendthrift trust and Kincaid's interest is not property of the estate.
 
 
 38
 REVERSED.
 
 FLETCHER, Circuit Judge, concurring:
 
 39
 While I concur in Judge Fernandez' thoughtful opinion, I write separately to express grave doubts about this circuit's opinion in In re Daniel, 771 F.2d 1352 (9th Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). Daniel holds that a debtor's interest in an ERISA-qualified pension plan is property of the bankruptcy estate subject to turnover to the trustee in bankruptcy unless it is otherwise protected by transfer restrictions under state spendthrift trust law. Id. at 1359-61. Judge Fernandez' opinion follows Daniel, but finds that the debtor's interest in this case is protected by applicable state law transfer restrictions. In my view, the debtor's interest in the plan, contrary to the holding in Daniel, is also properly protected by ERISA's restrictions on transfer.
 
 
 40
 The Bankruptcy Code excludes from the bankruptcy estate the debtor's interest in certain trusts by recognizing restrictions on their transfer. 11 U.S.C. Sec. 541(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable" in bankruptcy and is therefore not property of the estate. Daniel held that the phrase "applicable nonbankruptcy law" in 541(c)(2) "was intended to be a narrow reference to state 'spendthrift trust' law and not a broad reference to all other laws, including ERISA and IRC [the Internal Revenue Code], which prohibit alienation." Daniel, 771 F.2d at 1360 (emphasis in original). Thus, Daniel excludes ERISA's restrictions on transfer from the category of "applicable nonbankruptcy law." The effect is to make interests in ERISA-qualified plans property of the bankruptcy estate subject to turnover unless the interests are otherwise protected from transfer by state spendthrift law.
 
 
 41
 Several different factors cast doubt on Daniel's holding. First, the language of the Bankruptcy Code excludes from property of the estate any beneficial interests protected by a transfer restriction "enforceable under applicable nonbankruptcy law." 11 U.S.C. Sec. 541(c)(2). On its face, the language clearly refers to all applicable nonbankruptcy law; nowhere does state spendthrift law serve as the referent of "applicable nonbankruptcy law." The lack of ambiguity on the face of the statute calls into question Daniel's reliance on legislative history to limit the term "applicable nonbankruptcy law" to state spendthrift trust law; no reason exists to refer to legislative history when the statute is clear on its face. See In re Moore, 907 F.2d 1476, 1478-79 (4th Cir.1990) ("An appeal to legislative history is inappropriate here because the language of Sec. 541(c)(2) is clear."); see also Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."). Moreover, as noted in Moore, the legislative history of Sec. 541(c)(2) is, at most, ambiguous on the question of whether the phrase "applicable nonbankruptcy law" is intended to include ERISA. Moore, 907 F.2d at 1479. Although the relevant history establishes that Congress intended the phrase to apply to state spendthrift law, it does not establish that Congress intended to limit the phrase to that body of law. See id.
 
 
 42
 Further, both ERISA's purpose and its statutory scheme indicate that it properly constitutes "applicable nonbankruptcy law." ERISA aims to ensure that "if a worker has been promised a defined pension benefit upon retirement--and if he has fulfilled whatever conditions are required to obtain a vested benefit--he actually will receive it." Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). To attain this goal, statutes and regulations restrict the assignment and alienation of benefits. See, e.g., 29 U.S.C. Sec. 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."); 26 U.S.C. Sec. 401(a)(13) ("A trust shall not constitute a qualified trust under this section [exempting ERISA trusts from federal taxation] unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated."); Treas.Reg. Sec. 1.403(a)-13(b)(1) ("Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution, or other legal or equitable process."). ERISA provisions therefore seek to prevent alienation of benefits, either voluntarily or involuntarily. As such, ERISA falls within the plain meaning of the term "applicable nonbankruptcy law."[1]
 
 
 43
 Finally, the holding in Daniel raises the specter of deeply disrupting the protections granted by Congress under ERISA, both for those who file for bankruptcy and for those who do not. Plans must comply with the anti-alienation provisions in 26 U.S.C. Sec. 401(a)(13) and 29 U.S.C. Sec. 1056(d)(1). Failure to exclude ERISA-qualified plans from the bankruptcy estate would violate these provisions and could therefore subject the plans to ERISA disqualification and loss of tax exempt status. See McLean v. Cent. States, Southeast & Southwest Areas Pension Fund, 762 F.2d 1204, 1206 (4th Cir.1985) (recognizing IRS position that turnover of ERISA funds to Chapter 13 bankruptcy trustee would cause plan to lose its ERISA qualification and tax exempt status); In re Moore, 907 F.2d at 1476. It is unthinkable that Congress intended to eviscerate in this manner so much of the protection granted benefit plans under ERISA.
 
 
 44
 As Judge Fernandez aptly states, the interplay of bankruptcy and ERISA provisions under Daniel produces a "clash between ERISA and bankruptcy law, and [results in] our legal system ... becoming a mere farrago of unrelated provisions." Opinion at 13202. While Judge Fernandez avoids the morass for the moment by finding the trust in question to be protected by state restrictions on transfer of spendthrift trusts, such a resolution will not be possible in every case. As Daniel permits no harmonization of federal bankruptcy law and ERISA law, and as it undercuts the purposes of ERISA, no doubt one day our court must face directly the serious problems it presents.
 
 
 
 [1]
 See 29 U.S.C. Secs. 1001 et seq., and 26 U.S.C. Secs. 401(a)(13) & (k)
 
 
 [2]
 The Plan specifically provides that it is to be governed by the laws of Massachusetts. However, the BAP questioned whether Massachusetts had a substantial relationship to the parties or the transaction, and whether Oregon law should instead be applied. The BAP did not resolve this dispute, since it found that under either state's law, the Plan would not be considered a spendthrift trust. Kincaid, 96 B.R. at 1018. Similarly, we do not have to determine which law applies since there is no conflict between the two states' laws
 
 
 [3]
 This is so because implicit in the term "spendthrift" is the notion that the distribution of the trust is controlled by someone other than the beneficiary of the trust. Compare Perabo v. Gallagher, 241 Mass. 207, 135 N.E. 113 (1922); West, 81 B.R. at 25-26, with State Street Trust Co. v. Kissel, 302 Mass. 328, 19 N.E.2d 25 (1939); Barnard v. Stone, 159 Mass. 224, 34 N.E. 272 (1893)
 
 
 [4]
 Since we find that the trustee has no rights to Kincaid's interest in her Plan because it is not property of the estate, we do not reach the question of whether the interest in the Plan would be exempt if it were property of the estate
 
 
 [1]
 The sweeping preemptive effect granted ERISA in post-Daniel Supreme Court cases also strongly suggests that Daniel too narrowly construed the preemptive effects of ERISA. 29 U.S.C. Sec. 1144(a) directs that, with the exception of laws regulating insurance, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." In Pilot Life Insurance Company v. Dedaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court stated that "the preemption clause is not limited to 'state laws specifically designed to affect employee benefit plans.' " Id. at 48, 107 S.Ct. at 1553 (quoting Shaw v. Delta Air Lines, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). Instead, the Court read Sec. 1144(a) to preempt all state law affecting ERISA plans, whether explicitly or implicitly. Moreover, in Mackey v. Lanier Collection Agency & Service, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court read ERISA's preemption provisions and restrictions on alienation to bar the garnishment of ERISA pension plan benefits in state garnishment proceedings. 486 U.S. at 836-38, 108 S.Ct. at 2188-89 (dicta). The Supreme Court's interpretation of these provisions is based on Congress' intent in passing ERISA's sweeping preemption provisions: ERISA-qualified pensions should be treated uniformly across the country, rather than subjected to the vagaries of state law, which Daniel insists must be applied. See also Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) ("Preemption ensures that the administrative practices of a benefit plan will be governed only by a single set of regulations.")