In re James M. HERZIG, Debtor.

Bankruptcy No. 93–13541–WCH.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

May 16, 1994.

Frederick D. Grant, Jr., David S. Kaplan, Grant & Kaplan, Boston, MA, for James M. Herzig.

Joseph P. Bernardo, Hoberman & Pollack, P.C., Boston, MA, for Shawmut Bank, N.A.

James A. Wilson, Weymouth, MA, for Signal Capital Corp.

## OPINION

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter is before the court for determination of Debtor's request for approval of his Amended Disclosure Statement and Plan. Shawmut Bank, N.A. and Signal Capital Corporation (the "Creditors") have filed objections.

The parties agree that the adequacy of the Statement and confirmability of the plan depend upon the treatment which I accord to Debtor's rights under a testamentary trust as set forth below.

### Agreed Facts

1. James M. Herzig ("Debtor") filed this Chapter 11 petition on April 16, 1993.

2. Debtor is married to Margaret Herzig ("Margaret"), with whom he lives.

3. Arthur J. Herzig, Debtor's father ("Arthur"), died testate on February 26, 1988, a resident of the State of New York.

4. Arthur's will was admitted to probate in New York on May 5, 1988. The will created a trust for the benefit of several beneficiaries, of whom Debtor is one ("the Trust").

5. Both the will and the Trust are governed by New York law.

6. The relevant provisions of the will creating the Trust are as follows:

"FIFTH: (b)(i) I give, devise and bequeath one-half (½) of my residuary estate to my Trustees on the following terms and conditions. The Trustees shall invest and reinvest this fund and collect the rents, issues, income and profits thereof. The Trustees shall then distribute so much or all of the resulting income and so much or all of the principal of this Trust fund at any time or from time to time in such amounts and proportions and without regard to equality of distribution as they deem advisable in their untrammeled discretion to or for the benefit of the class consisting of my son, JAMES [the Debtor], his wife MARGARET, and his children who may be living from time to time while this Trust shall continue in effect. Any undistributed income shall be added to principal annually. Without limiting the foregoing the Trustees may terminate this Trust at any time by distributing the then remaining principal to one or some or all of the members of the above described class in such amounts and proportions and without regard to equality of distribution as the Trustee (sic) shall deem advisable in their untrammeled discretion. In the exercise of the discretion conferred by this paragraph my son WILLIAM or his successor Trustee shall act alone and my son JAMES shall be without any power in his regard.

"(ii) This Trust shall continue in full force and effect as long as my son JAMES may live, subject to prior termination as provided in Article TENTH hereof. Upon JAMES' death the entire Trust fund, including undistributed income and accumulations, shall be distributed among such individuals among his spouse and his issue as he may appoint by his Will duly admitted to probate either outright or subject to such Trusts and conditions as JAMES' said Will may provide.... To the extent to which JAMES fails to make an effective exercise of this power the unappointed portion of the Trust fund shall be distributed to his issue per stirpes.

"NINTH: C. No interest of any beneficiary of any Trust created under this my Will while in the hands of my Trustees shall be subject to pledge, assignment, sale or transfer in any manner, nor shall any beneficiary have the right to anticipate, charge or encumber his or her interest, nor shall such interest be liable or subject in any manner for the debts, contracts, liabilities, or torts of such beneficiary. Nothing contained in this paragraph shall be construed or deemed to limit in any way the exercise of the power of appointment given in this Will or is intended to or shall control to any extent the discretion, power and authority of my Trustees to make distribution of any Trust property, whether principal or income, in accordance with the provisions of this Will.

"TENTH. (a) I nominate and appoint my sons, WILLIAM [A. HERZIG] and JAMES, or the survivor of them, as Executors and Trustees under this Will.

"(b) Any Trustee (including any successor Trustee) in office shall at all times have the right to designate a successor Trustee by written instrument duly signed and acknowledged, a copy of which shall be delivered to JAMES and the other Trustee.... Such instrument is to be at all times revocable and amendable.

"(c) If WILLIAM or his successor Trustee should be unable or unwilling to qualify or after qualifying should vacate the Trusteeship for whatever reason, (i) the appointment of a successor Trustee shall not be valid unless and until the appointment shall been brought to the notice of JAMES ... and (ii) such appointment shall not take effect if disapproved by JAMES, in writing within thirty (30) days after receipt of such notice, in which case the Trust shall terminate and be distributed to JAMES unless JAMES' wife MARGARET is willing to qualify in which event MARGARET shall become such successor Trustee upon her qualifying as such.

"(d) JAMES shall have the right at any time to require WILLIAM to resign as Trustee in which event WILLIAM shall be succeeded by JAMES' wife MARGARET.

"(e) MARGARET shall not be entitled to qualify as a Trustee hereunder if at the time of such qualification she is not then living with JAMES. Furthermore, once qualified as a Trustee hereunder MARGA-

RET shall no longer be a member of the beneficiary class described in paragraph (b)(i) of Article FIFTH of this Will."

7. On April 13, 1988 Debtor renounced his appointment as executor and Trustee under the will.

8. On May 5, 1988 letters of trusteeship were issued to William A. Herzig ("William").

9. No other Trustee has ever qualified or served.

10. The assets of the Trust are approximately $1,000,000.

## Discussion

Debtor argues that his rights under the Trust are not property of his estate because of 11 U.S.C. § 541(c), which provides:

"A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

■ It thus becomes necessary to examine the law of New York to determine the enforceability the restriction on transfer quoted above. Ideally this determination should be made by New York state courts, but certification to the New York Court of Appeals from the federal system is only from the federal Circuit Courts of Appeal. N.Y.Ct. Rules § 500.17(a). Having no other recourse, I shall have to predict what the New York courts would do. *See In re SPM Manufacturing Corp.*, 163 B.R. 411, 419 (Bankr. D.Mass.1994).

Spendthrift trusts in New York are in part a creature of statute. The New York Estates, Powers and Trusts Law ("EPTL") provides that, with certain exceptions not relevant here,

"The interest of the beneficiary of any trust may be assigned or otherwise transferred, except that ... the right of a beneficiary of an express trust to receive the income from property and apply it to the use of or pay it to any person may not be transferred by assignment or otherwise unless a power to transfer such right, or any part thereof, is conferred upon such

beneficiary by the instrument creating or declaring the trust."

EPTL § 7–1.5(a)(1).

The spendthrift clause in the will is considerably broader than the statute. It refers to the interest of the beneficiaries generally, while the statute prohibits transfers only of the right "to receive the income from property." However, it appears that New York law recognizes restrictions on the alienation of the principal of a trust. *Estate of Vought*, 25 N.Y.2d 163, 303 N.Y.S.2d 61, 250 N.E.2d 343 (1969). For this reason, I am not willing to accept the argument of the Creditors that Debtor should be treated as if he had been the grantor of the Trust, which would void the trust as against creditors under EPTL § 7–3.1.[1]

■ I am left, then, with the issue of whether, as matters of statutory construction and common law, the provisions of Article TENTH constitute a power to transfer Debtor's rights under the trust, thus vitiating the spendthrift provision.

■ Because James renounced his appointment, the language of the will should be read as if he does not appear as a trustee.

So long as William remains as the sole trustee, the Debtor has no control over the assets of the Trust. However, the Debtor is given the express power to require William to resign (TENTH (d)). If William should do so, the will provides initially that his successor shall be Margaret, Debtor's wife, *Id.*, but subject to a condition precedent— that she is living with Debtor at the time of her qualification as trustee (TENTH (e)).

■ Neither William nor Margaret can be considered an alter ego of Debtor nor under his control.

■ If Margaret is not living with Debtor, she cannot qualify as the successor trustee. *Id.* When William's successor trustee cannot qualify, Debtor has a veto over the designation of anyone else (TENTH (c)(ii)). Should he exercise that right, Margaret being unable to qualify, the trust terminates. *Id.*

---

1. "A disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator."

I do not find convincing Debtor's argument that the New York statutes providing for the appointment of successor trustees [2] would override that conclusion. The terms of the Trust quoted above control and no judicial appointment would be made.

Debtor and Margaret are currently living together. Debtor could, however, take up residence elsewhere, require William to resign, refuse to agree to the appointment of a successor to William, and obtain the Trust assets. The Creditors urge that this possibility is enough to constitute sufficient power over the Trust to taint the spendthrift clause fatally; Debtor has the power to cause the trust to terminate and hence it is not exempt from the claims of his creditors.

Prior to the decision of the Supreme Court in *Patterson v. Shumate*, — U.S. —, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), many courts held that the phrase "applicable non-bankruptcy law" in § 541(c) was limited to state laws and did not include federal legislation such as ERISA. *See, e.g., Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir.1985) ("only applies to state law concerning spendthrift trusts"). As a result, numerous cases reviewed particular provisions of retirement plans applying the state law pertaining to spendthrift trusts.

The conclusion of many courts was that where the debtor has the power to amend or terminate the trust, the debtor has such absolute authority over the trust that it must be included as property of his estate. As Judge Paskay said in *In re Martin*, 119 B.R. 297 (Bankr.M.D. Fla.1990), "Generally, courts have not classified interests in ERISA plans as spendthrift trusts because the debtor usually has the ability to reach and manipulate his interests in the plan, even if to do so would terminate the debtor's employment and interest in the plan." *Id.* at 299. The other cases cited by Judge Paskay reach the same result—the law of spendthrift trusts does not permit a beneficiary to retain both the protection of the spendthrift clause and the right to take action which would result in a termination of or distribution from the plan. *See* cases collected at M. Krasny & B. Grohsgal, *Whose Pension is It Anyway?*, 97 Comm.L.J. 12 (1992).

Even those courts which found that ERISA plans were spendthrift trusts at common law based their conclusion upon the high cost to a Debtor of plan termination. *See generally,* H.Y.S. Sherman, *ERISA Benefits under the Bankruptcy Code and a New York Debtor's Rights,* 58 Brook.L.Rev. 177 (1992). For example, in the view of the Ninth Circuit,

> "Courts have disagreed as to whether the ability to gain access to an entire vested interest by the termination of employment is sufficient to destroy the spendthrift character of a plan. Some courts have determined that since the provision enables a debtor, by voluntary action, to invade the corpus of the trust, it is not a true spendthrift trust. Others have determined that the ramifications of having to quit one's job in order to gain access to the corpus of the trust are sufficient to prevent the use and abuse of the access as a means of sheltering assets. We adopt the latter position. While it is true that termination of one's job is often in one's own hands, it would be a rather drastic step to take for the purpose of obtaining funds in the Plan."

*John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid),* 917 F.2d 1162, 1168 (9th Cir.1990) (citations omitted).

Termination of this Trust does not require drastic action on Debtor's part. He can, under the scenario outlined above, and with minimal inconvenience to himself, cause the corpus of the Trust to be distributed to him. Debtor could move back home and resume his normal life, since the will language does not require either a separation of a specific duration or an intent to remain apart for the indefinite future.

---

**2.** "Subject to the relevant provisions of the civil practice law and rules, the supreme court has power ... in case of the resignation or removal of a trustee, to appoint a successor trustee.... This section does not apply ... where other provision is made by law for ... the appointment of a successor trustee." EPTL § 7–2.6(a)(3). "The [surrogate's] court shall not appoint a trustee, successor or co-trustee if the appointment would contravene the express terms of the will...." N.Y. Surrogate's Court Procedure Act § 1502(2).

This possibility destroys the spendthrift aspect of the Trust and Debtor's interest becomes property of his estate. The issue is not, as Debtor would have it, the ability of a bankruptcy trustee to exercise the options available to Debtor. It is that the mere existence of the power described causes the spendthrift provision to fail. This is true as to both the statutory and common law elements.

Having reached this conclusion, it is obvious that the Creditors' objections to the Amended Disclosure Statement must be sustained. Debtor is directed to formulate a new amended disclosure statement and plan consistent with this opinion and to file and notice the same within forty-five days from the date of this opinion. If Debtor fails to do so, I shall, without further hearing, dismiss or convert this case.

A separate order will enter.