**In re Charlton D. ATWOOD and Jana G. Atwood, Debtors.**

**Hank Spacone, Chapter 7 Trustee, Appellant,**

v.

**Charlton D. Atwood and Jana G. Atwood, Appellees.**

**BAP No. EC–00–1254–RyMaP.**

**Bankruptcy No. 99–36583–B–7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 19, 2001.

Filed Feb. 7, 2001.

J. Russell Cunningham, Desmond, Miller & Desmond, Sacramento, CA, for Hank Spacone, Trustee.

Charlton D. Atwood, Jana G. Atwood, Pro se Appellees.

Before: RYAN, MARLAR, and PERRIS, Bankruptcy Judges.

## *OPINION*

RYAN, Bankruptcy Judge.

After filing bankruptcy, Charlton and Jana Atwood ("Debtors") claimed as exempt three retirement accounts (the "Exemptions"), and the chapter 7[1] trustee ("Trustee") objected to the Exemptions (the "Objection"). After a hearing, the bankruptcy court overruled the Objection, and Trustee timely appealed.

We AFFIRM.

## I. FACTS

Charlton has been employed with the City of Sacramento (the "City") for more than ten years. Throughout his employment with the City, Charlton has made contributions to three retirement accounts: (1) the California Public Employees Retirement System Plan (the "CALPERS Account"), (2) a deferred compensation plan pursuant to § 401(k) of the Internal Revenue Code, 26 U.S.C. §§ 1–9833 (the "IRC") (the "401(k) Account"), and (3) a deferred compensation plan pursuant to § 457(b) of the IRC (the "457(b) Account") (collectively, the "Accounts").[2]

The 457(b) Account was established pursuant to a plan (the "457(b) Plan") established by the City as "a deferred compensation program for its employees that serves the interest of the City by enabling it to promote reasonable retirement security for its employees by providing increased flexibility in its personnel management system, and by assisting in attraction and retention of competent personnel." Sacramento, Cal., Resolution No. 97–076 (Feb. 18, 1997) (the "Resolution"). The Resolution was adopted because "amendments to the Internal Revenue Code ... [were] enacted that require[d] changes to the structure of, and allow[ed] enhancements to the benefits of the ... [457(b) ] Plan." *Id.* The Resolution also amended the 457(b) Plan by clearly establishing it as a trust (the "Trust"). The 457(b) Plan provides that

[it] shall be an agreement solely between the ... [City] and [the] participating Employees. The [457(b) ] Plan and Trust ... shall be maintained for the exclusive benefit of eligible Employees and their Beneficiaries. No part of the corpus or income of the Trust shall revert to the ... [City] or be used for or diverted to purposed [sic] other than the exclusive benefit of Participants and their Beneficiaries.

457(b) Plan and Trust Document, at 2. This was done in accordance with § 457(g) of the IRC, which provides in pertinent part that "[a] plan ... shall not be treated as an eligible deferred compensation plan unless all assets and income of the plan described in subsection (b)(6) are held in trust for the exclusive benefit of participants and their beneficiaries." 26 U.S.C.

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Debtors' schedules indicate that Charlton has an interest in three accounts, the CALPERS Account, the 401(k) Account, and a "457(k) deferred compensation" account. Debtors' Schedule C (Dec. 20, 1999), at 2–3. Despite scheduling the account as a 457(k) account, the account intended to be exempted is the 457(b) Account.

Although Trustee originally objected to Debtors' claimed exemptions in all three of the Accounts, it appears that Trustee's concerns as to the CALPERS Account and the 401(k) Account were satisfied. The bankruptcy court dealt with the Objection only as it pertained to the 457(b) Account. It is unclear from the Record the resolution of the Objection as it pertained to the CALPERS Account and the 401(k) Account. On appeal, Trustee does not address either the CALPERS Account or the 401(k) Account. Accordingly, we address only the 457(b) Account.

§ 457(g). The Resolution also restricts the City from making loans to its participants based upon amounts in a participant's 457(b) account.

The Trust is administered by the ICMA Retirement Corporation ("ICMA"), and the City is the trustee of the Trust. Also, in order to comply with the requirements of the IRC, the Trust limits access to a participant's 457(b) Plan funds. The City has a policy that describes these limitations as follows:

> The City ... administers the deferred compensation plans to comply with Internal Revenue Code Section 457. For the Internal Revenue Service (IRS) to grant tax deferred eligibility to a deferred compensation plan, the amount deferred may not be paid out or otherwise made available to participants until retirement, separation from service, disability or death. In order to protect the plan from losing tax deferral status and to be in compliance with the Internal Revenue Code, discretionary access by participants to their accounts is not allowed unless one of the events described above occurs.
>
> The only exception to the above restrictions on availability of funds is the occurrence of an unforeseeable emergency. An unforeseeable emergency is defined by the IRS as severe financial hardship to the participant, caused by:
>
> a. a sudden and unexpected illness or accident of the participant or of a dependent (as defined by the Internal Revenue Code).
>
> b. loss of the participant's property due to casualty.
>
> c. other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant.

Sacramento, Cal. Deferred Compensation Early Withdrawal Policy, at 1. The Trust also contains an anti-alienation clause: "[N]o [p]articipant or [b]eneficiary shall have any right to commute, sell, assign, pledge, transfer or otherwise convey or encumber the right to receive any payments hereunder, which payments and rights are expressly declared to be non-assignable and non-transferable." 457(b) Plan and Trust Document, at 12.

On December 20, 1999, Debtors filed their chapter 7 petition. In their schedules, Debtors listed the Exemptions claiming that they were "not property of [the] estate." Debtors' Schedule C (Dec. 20, 1999), at 2–3. At the time of filing, the 401(k) Account, the CALPERS Account, and the 457(b) Account were worth $48,230.60, $45,737.83, and $75,261.08, respectively. Debtors' Schedule I shows that Debtors continued making contributions to the Accounts up to the date of filing.

On February 15, 2000, Trustee filed the Objection. After a hearing, the bankruptcy court overruled the Objection, holding that the 457(b) Account was not property of the estate. Trustee timely appealed.

## II. ISSUE

Whether the bankruptcy court erred in holding that the 457(b)

Account was not property of the estate.

## III. STANDARD OF REVIEW

■ We review *de novo* the bankruptcy court's determination of whether a retirement account is property of the estate. *See Ehrenberg v. Southern Cal. Permanente Med. Group (In re Moses)*, 167 F.3d 470, 473 (9th Cir.1999).

## IV. DISCUSSION

■ The bankruptcy court held that the 457(b) Account was not property of the estate because (1) the 457(b) Plan established a valid trust; (2) ICMA was the administrator of the Trust; (3) "[o]nce an employee elects to participate in the ... [457(b) Plan], the election is irrevocable;" and (4) participants have only limited access to the Trust's funds. Memorandum Decision (Apr. 5, 2000), at 3. On appeal,

Trustee contends that the bankruptcy court erred in holding that the 457(b) Account is not property of the estate because (1) the funds are not contained in a valid trust, (2) Charlton is the settlor of his own spendthrift trust and therefore no applicable nonbankruptcy law provides a means of enforcing the transfer restriction found in the trust instrument, and (3) Charlton had excessive control over the funds of the Trust because the Trust document contains a provision potentially allowing Debtors to obtain a loan using their account balance as a security interest. We disagree.

Upon the filing of a petition, an estate is created that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). However, the Code excludes from property of the estate interests that contain a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2).

In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court applied a three-part test for determining whether an interest is excluded under § 541(c)(2). *Id.* at 758–59, 112 S.Ct. 2242. First, the Court determined that the interest was held in a valid trust. Second, the Court determined that the transfer restriction was contained in a trust instrument. Third, the Court determined that applicable nonbankruptcy law provided a means to enforce the transfer restriction. The third prong of this test can be satisfied under either federal or state law.[3] *Id.*

California law recognizes spendthrift trusts, but prohibits a settlor of a spendthrift trust from acting as a beneficiary of the same trust. *See Moses*, 167 F.3d at 473. In holding that excessive control over a trust did not exist where debtors

sought to exclude a Keogh Plan from their estate under § 541(c)(2), the *Moses* court noted that the trust instrument in question contained an anti-alienation clause and prevented participants from borrowing money from the plan. The *Moses* court also noted that the plan was administered by a third-party, and once debtor decided to join, the decision was irrevocable. The plan in question also limited distributions to termination, retirement, disability, or death. *Id.* at 472.

In *John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162 (9th Cir.1990), the Ninth Circuit dealt with the question of whether an ERISA account established a valid spendthrift trust. *Id.* at 1167. The court concluded that a plan that provided for the debtor to receive a "distribution of her interest in the Plan upon death, attainment of age 59½, disability, retirement, termination of employment or termination of plan" did not give the debtor such control as to render the trust invalid as a spendthrift trust. *Id.* The Ninth Circuit also noted that neither the insertion of a loan provision nor a hardship provision necessarily leads to the conclusion that debtor exercised excessive control over the corpus of the trust. *Id.* at 1168.

Similarly, in *McDonald v. Metz (In re Metz)*, 225 B.R. 173 (9th Cir. BAP 1998), we found that an ERISA plan was excluded from the estate under § 541(c)(2) where the debtor's control over the trust res was limited. *Id.* at 178. We noted that the debtor did not administer the trust and did not borrow money against the res after the dissolution of her marriage. Additionally, the debtor did not make withdrawals from the account after the dissolution. Importantly, we indicated that "[t]he ability to make a withdrawal, without more, is not sufficient to destroy its [the plan's] spendthrift character." *Id.*

---

**3.** At oral argument, Trustee affirmed that it was only the third prong of the test that was at issue.

Here, it is clear that the Resolution created a trust. The document expressly states that "[a] Trust is hereby created to hold all the assets of the Plan for the exclusive benefit of Participants and Beneficiaries." 457(b) Plan and Trust Document, at 2. Moreover, the Trust has an anti-alienation clause expressly preventing any assignment or transfer of any payments or rights under the 457(b) Plan. Thus, the key issue is whether the transfer restriction is enforceable under California law, which in turn, depends on the degree of Debtors' control over the trust res.[4]

▉ As stated in *Moses*, "The critical inquiry in determining whether a spendthrift trust is valid under California law is whether the trust's beneficiaries exercise excessive control over the trust." 167 F.3d at 473. In other words, a participant cannot exercise excessive control over a trust thereby shielding the trust "with an anti-alienation provision lacking true substance." *Id.* Lastly, a beneficiary of a spendthrift trust cannot also be a settlor of the trust. *Id.*

▉ Here, Debtors did not exercise excessive control over the Trust. First, the

**4.** At oral argument, Debtors acknowledged that the 457(b) Plan allows them to change their contribution on a monthly basis, if they so choose. However, there is no evidence in the Record that Debtors attempted to manipulate their contributions to the 457(b) Account by changing the amount of their contributions. In any event, even monthly changes in the amount of Debtors' contributions would not constitute control over the res as the funds in the 457(b) Account would still be subject to all the restrictions governing access by participants.

**5.** In support of his contentions, Trustee urges us to distinguish cases such as *Kincaid, Moses,* and *Metz* on the grounds that they deal with ERISA and Keogh plans and not IRC § 457(b) accounts and follow *In re Dunn,* 215 B.R. 121 (Bankr.E.D.Mich.1997) and *In re Leadbetter,* 111 B.R. 640 (Bankr.N.D.Ohio 1990). In *Dunn* and *Leadbetter,* the bankruptcy courts held that the IRC 457(b) plans in question were property of the estate. We find Trustee's argument unpersuasive.

As previously noted, in 1996, Congress amended IRC § 457 by adopting subsection

Trust is not a self-settled trust because the City, not Debtors, is the settlor of the Trust. Trustee argues that the Trust is self-settled because Charlton contributed part of his compensation to the 457(b) Plan. However, this alone is insufficient to cause a trust to be self-settled. See *Kincaid,* 917 F.2d at 1167. Second, the City created the Trust. Third, ICMA administers the trust. Fourth, Debtors do not have the ability to terminate or amend the 457(b) Plan. Finally, participants have access to the Trust funds only (1) when a participant reaches the age of 70½ years old, (2) at the time of separation of service, (3) upon death, or (4) in the case of an unforeseeable emergency. Additionally, although the 457(b) Plan permits loans that are secured by the funds in the 457(b) Account, the Resolution prevents these types of loans from being made. These same provisions have previously been accepted by courts in the Ninth Circuit as not invalidating a spendthrift trust. See *Moses,* 167 F.3d at 473; *Kincaid,* 917 F.2d at 1167; *Metz,* 225 B.R. at 178.

Accordingly, in light of *Kincaid, Moses,* and *Metz,*[5] the bankruptcy court was cor-

(g), which provides in pertinent part that "[a] plan ... shall not be treated as an eligible deferred compensation plan unless all assets and income of the plan described in subsection (b)(6) are held in trust for the exclusive benefit of participants and their beneficiaries." 26 U.S.C. § 457(g). Here, both cases referred to by Trustee dealt with plans established prior to and not modified pursuant to the 1996 Amendments, and as such, neither case involved a trust established pursuant to amended IRC § 457(g).

More importantly, both cases have been overruled, either directly or indirectly, and are no longer good law. In an unpublished decision, the Sixth Circuit affirmed the bankruptcy court's decision in *Leadbetter* with very little analysis. See *Sicherman v. Ohio Pub. Employees Deferred Comp. Program,* No. 91-3076, 1991 WL 211272 (6th Cir. Oct.21, 1991). The decision in *Leadbetter* was then vacated when the Supreme Court granted certiorari and remanded the case to the Sixth Circuit for further consideration in light of *Patterson. See Ohio Pub. Employees Deferred Comp. Program v. Sicherman,* 505 U.S. 1202, 112 S.Ct. 2987, 120 L.Ed.2d 865 (1992).

rect in holding that Debtors did not have excessive control over the 457(b) Account and that the 457(b) Plan was a valid spendthrift trust.

### V. CONCLUSION

In sum, the bankruptcy court did not err in overruling the Objection.

AFFIRMED.

Likewise, *Dunn* was recently overruled by the Sixth Circuit because its reasoning conflicted with *Patterson.* *See Taunt v. General Ret. Sys. of Detroit (In re Wilcox),* 233 F.3d 899, 904 (6th Cir.2000).