**In re Joel Jerome HENDERSON.**

**In re Frank John DANTONE.**

**Bankruptcy Nos. 92–21183, 92–21184.**

United States Bankruptcy Court,
N.D. Mississippi.

July 15, 1993.

William R. Armstrong, Jr., Henderson, Dantone and Hines, P.A., Greenville, MS, for Joel Jerome Henderson and Frank John Dantone.

R. Michael Bolen, Sr. Atty., Jackson, MS, for U.S. Trustee Victoria E. Young.

Craig M. Geno, Holcomb, Dunbar, Connell, Chaffin & Willard, Jackson, MS, for Sunburst Bank.

David J. Puddister, Lake, Tindall and Thackston, Greenville, MS, for Magnolia Federal Bank for Sav.

## MEMORANDUM OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court in each of the above captioned bankruptcy cases are objections by the Office of the U.S. Trustee to certain exemptions claimed by the debtors; responses to said objections having been filed by the debtors; memoranda of law having been submitted by the parties; and the court having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to these proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### II.

The parties have stipulated to the following facts:

### JOEL JEROME HENDERSON (92–21183)

1. Joel Jerome Henderson is a permanent resident citizen of the State of Mississippi and is forty-three (43) years of age.

2. Since 1974, Henderson has been an employee of a professional association for the practice of law located in Greenville, Washington County, Mississippi.

3. On March 1, 1980, Henderson's employer, Henderson, Duke, & Dantone, P.A., established a defined benefit pension plan and trust which was the subject of a favorable determination by the Internal Revenue Service (IRS) that the plan qualified for federal tax exemption pursuant to the provisions of § 401(a) of the Internal Revenue Code. The plan was terminated by the employer on December 31, 1986, following IRS approval, in order to establish a Simplified Employee Pension–Individual Retirement Account (SEP–IRA). Henderson's distributions upon termination were rolled over into the SEP–IRA account within thirty (30) days of receipt. On March 3, 1987, Henderson, Duke & Dantone, P.A., executed a 5305 SEP–IRA form pursuant to § 408(k) of the Internal Revenue Code.

4. Northwestern Mutual Insurance Company SEP–IRA individual retirement annuities, nos. 11659862, 11530037, 11388982, 10805275, and 12054106, qualify under § 408 of the Internal Revenue Code and are not governed by ERISA. They are simplified employee pensions within the meaning of 26 U.S.C. § 408(k)(1).

5. Deposit Guaranty Bank SEP–IRA account no. 428–94–2265 OIC–119768 qualifies under § 408 of the Internal Revenue Code and is not governed by ERISA. It is a simplified employee pension within the meaning of 26 U.S.C. § 408(k)(1).

6. All contributions to Northwestern Mutual Insurance Company SEP–IRA account no. 11659862 are direct rollovers into a SEP–IRA annuity, within thirty days of receipt of a distribution from an IRS approved termination of an employer created defined benefit pension plan and trust, which had been qualified for federal tax exemption by the IRS under § 401 of the Internal Revenue Code. The employer was the source of all contributions to the defined benefit pension plan and trust.

7. All contributions to Northwestern Mutual Insurance Company SEP–IRA annuities, nos. 11530037, 1138982, 10805275, and 12054106, and a contribution of $10,747.24 to Deposit Guaranty National Bank SEP–IRA account no. 428–94–2265 OIC–119768, were direct annual simplified employee pension contributions made by the employer pursuant to § 408(k) of the Internal Revenue Code and SEP–IRA contribution agreements which are exempt from federal income taxes under the laws of the United States.

8. The remaining contribution to Deposit Guaranty National Bank SEP–IRA account no. 428–94–2265 OIC–119768, other than the annual direct employer simplified employee pension contributions, was a direct rollover within thirty days of the receipt of $16,974.10 on April 30, 1990, from an IRS approved termination of an employer created defined

benefit pension plan and trust which had been qualified for federal tax exemption under § 401 of the Internal Revenue Code. The employer was the source of all contributions to the defined benefits pension plan and trust.

### FRANK JOHN DANTONE (92–21184)

1. Frank John Dantone is a permanent resident citizen of the State of Mississippi and is forty-three (43) years of age.

2. Since 1977, Frank John Dantone has been an employee of a professional association for the practice of law located in Greenville, Washington County, Mississippi.

3. On March 1, 1980, Dantone's employer, Henderson, Duke, & Dantone, P.A., established a defined benefit pension plan and trust which was the subject of a favorable determination by the IRS that the plan qualified for federal tax exemption pursuant to the provisions of § 401(a) of the Internal Revenue Code. The plan was terminated by the employer on December 31, 1986, following IRS approval, in order to establish a Simplified Employee Pension–Individual Retirement Account (SEP–IRA). Dantone's distributions upon termination were rolled over into the SEP–IRA account within thirty (30) days of receipt. On March 3, 1987, Henderson, Duke & Dantone, P.A., executed a 5305 SEP–IRA form pursuant to § 408(k) of the Internal Revenue Code.

4. Morgan Keegan and Company, Inc., SEP–IRA account no. 171114730, qualifies under § 408 of the Internal Revenue Code and is not governed by ERISA. It is a simplified employee pension within the meaning of 28 U.S.C. § 408(k)(1).

5. $39,426.71, plus accumulated earnings, deposited in Morgan Keegan and Company, Inc., SEP–IRA account no. 171114730, was contributed as a direct rollover into the SEP–IRA account within thirty days of the receipt of its distribution. The distribution was the result of an IRS approved termination of an employer created defined benefit pension plan and trust, which had been qualified for federal tax exemption under § 401(a) of the Internal Revenue Code. The employ-

er was the source of all contributions to the defined benefit pension plan and trust.

7. All contributions, other than the rollover referred to in paragraph 5. above, to Morgan Keegan and Company, Inc., account no. 171114730, were made by the employer as direct annual simplified employee pension contributions pursuant to 408(k) of the Internal Revenue Code and SEP–IRA contribution agreements which are exempt from federal income taxes under the laws of the United States.

### III.

As noted above, the retirement plans in these bankruptcy cases are known as Simplified Employee Pension–Individual Retirement Accounts, referred to herein as SEP–IRA's. Although SEP–IRA's are qualified under § 408 of the Internal Revenue Code, they are not considered as being qualified under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). Therefore, the recent United States Supreme Court decision, *Patterson v. Shumate*, 504 U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), does not expressly apply to these proceedings.

The issue in *Patterson v. Shumate* was whether an anti-alienation provision in an ERISA-qualified pension plan constituted a restriction on transfer enforceable under "applicable nonbankruptcy law" for purposes of the § 541(c)(2) [11 U.S.C. § 541(c)(2) ] exclusion of property from the debtor's bankruptcy estate. A unanimous Court held that, plainly read, the provision encompassed any relevant nonbankruptcy law, including federal law such as ERISA.

Section 541(c)(2) of the Bankruptcy Code states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

After holding that ERISA could be "applicable nonbankruptcy law," the Court then determined that the anti-alienation provision contained in the ERISA-qualified plan at issue satisfied the literal terms of § 541(c)(2).

■ As such, because SEP–IRA's are not ERISA qualified, this court cannot conclude that they are excluded from property of the bankruptcy estates pursuant to § 541(c)(2). Accordingly, if they are to be protected from the creditors of the debtors' bankruptcy estates, they must qualify as exemptible assets under state law. The parties candidly recognize that because of the inapplicability of *Patterson v. Shumate*, that the issue in these proceedings has narrowed to the question of which of two Mississippi exemption statutes can be claimed by the debtors. The two statutes can produce remarkably different results depending on the financial circumstances of the debtors. The statutes are set forth in pertinent part below:

§ 71–1–43. Income or principal of employee trust plan not to be encumbered

The income or principal payable to a beneficiary or beneficiaries under any trust created by an employer as part of a pension plan, disability or death benefit plan, profit-sharing plan, or under any trust created under a retirement plan for which provision has been made under the laws of the United States of America exempting such trust from federal income tax shall not be pledged, assigned, transferred, sold, or in any manner whatsoever accelerated, anticipated, or encumbered by the beneficiary or beneficiaries. Nor shall any income or principal be in any manner subject or liable in the hands of the trustee for the debts, contracts, or engagements of the beneficiary or beneficiaries, or be subject to any assignment or other involuntary alienation or disposition whatsoever. Nor shall any income or principal be subject to the levy of any execution, writ of attachment, or garnishment thereon.

This statute, which was adopted on May 4, 1954, decades before the creation of SEP–IRA's in the Internal Revenue Code, could conceivably be interpreted as exempting the full amount of a duly qualified SEP–IRA from obligations owed by a debtor to his or her creditors.

§ 85–3–1. Property exempt from seizure under execution or attachment.

There shall be exempt from seizure under execution or attachment:

(b)(iii) Payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless:

A.  Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

B.  Such payment is on account of age or length of service; and

C.  Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954.

Without question, this statute, which became effective on July 1, 1991, clearly applies to SEP–IRA's which are qualified under § 408 of the Internal Revenue Code. The significant difference in this statute and the aforementioned predecessor is that this statute limits the amount of the exemption to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. The former statute has no such limiting effect.

In analyzing the applicability of the two statutes, the court has reviewed several opinions which are instructive.

In *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981), the United States Supreme Court considered the issue of whether an amendment to the Wildlife Refuge Revenue Sharing Act had repealed the Mineral Leasing Act by implication. Language from the opinion which is helpful to the resolution of the dispute herein is set forth as follows:

... Recognizing this, the Secretary (Watt) invokes the maxim of construction that the more recent of two irreconcilably conflicting statutes governs. 2A C. Sands, Sutherland on Statutes and Statutory Construction § 51.02 (4th ed 1973). Without depreciating this general rule, we decline to read the statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress. Our exami-

nation of the legislative history is guided by another maxim: " 'repeals by implication are not favored,' " *Morton v. Mancari,* 417 US [535], at 549, 41 L Ed 290, 94 S Ct 2474 [2482 (1974) ], quoting *Posadas v. National City Bank,* 296 US 497, 503, 80 L Ed 351, 56 S Ct 349[, 352] (1936). " 'The intention of the legislature to repeal must be clear and manifest.' " *United States v. Borden Co.,* 308 US 188, 198, 84 L Ed 181, 60 S Ct 182[, 188] (1939), quoting *Red Rock v. Henry,* 106 US 596, 602, 27 L Ed 251, 1 S Ct 434[, 439] (1883). We must read the statutes to give effect to each if we can do so while preserving their sense and purpose. *Mancari,* supra [417 U.S.], at 551, 41 L Ed 2d 290, 94 S Ct 2474[, at 2483]; see *Haggar Co. v. Helvering,* 308 US 389, 394, 84 L Ed 340, 60 S Ct 337[, 339–40] (1940).

451 U.S. at 265–66, 101 S.Ct. at 1677–78, 68 L.Ed.2d at 88.

Justice Scalia, while still sitting on the District of Columbia Circuit Court of Appeals, wrote the following in *FAIC Securities, Inc. v. United States,* 768 F.2d 352 (DC Cir.1985):

> "... It is a 'cardinal rule ... that repeals by implication are not favored.... In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when [sic] the earlier and later statutes are irreconcilable.' (citations omitted) ..."

*Id.* at p. 362.

In *Wisconsin Winnebago Business Comm. v. Koberstein,* 762 F.2d 613 (7th Cir.1985), the Seventh Circuit Court of Appeals, quoting *United States v. Crawford,* 47 F. 561, 569 (1891), stated the following:

> "If a later act covers the whole subject matter of an earlier act and embraces new provisions which plainly show that the latter act was intended as a substitute for the earlier act, the later act will operate as a repeal of the earlier act."

*Id.* 762 F.2d at p. 618.

In *Boudette v. Barnette,* 923 F.2d 754 (9th Cir.1991), the Ninth Circuit offered the following:

> "When two statutes conflict the general rule is that the statute last in time prevails as the most recent expression of the legislature's will. 2A C. Sands, *Sutherland Statutory Construction* § 51.02 (4th ed. 1984)."

*Id.* at p. 757.

> *See also, Sutherland Statutory Construction,* § 51.02, pp. 121, 122 (5th ed. 1992).

Even a casual reading of the two Mississippi statutes reveals an irreconcilable conflict. Section 71–1–43 allows the entire amount of an appropriately qualified employee benefit plan to be exempt, while § 85–3–1(b)(iii) allows as exempt only that portion which is reasonably necessary for the support of the debtor and any dependent of the debtor.

The legislative history applicable to § 71–1–43 is negligible. The legislative history applicable to § 85–3–1(b)(iii) indicates that the Mississippi Legislature was attempting to fashion an exemption statute covering employee benefit plans that was consistent with the federal exemption found in 11 U.S.C. § 522(d)(10)(E). The use of the identical language that appears in the federal exemption statute was in reaction to a decision of the Fifth Circuit Court of Appeals which had disallowed a debtor's claim of exemption to any portion of a qualified ERISA plan. *See, In Re Goff,* 706 F.2d 574 (5th Cir.1983). Ironically, *In re Goff* was implicitly, although not expressly, reversed by the Fifth Circuit in *Matter of Dyke,* 943 F.2d 1435 (5th Cir. 1991). Thereafter, as noted earlier, the United States Supreme Court in *Patterson v. Shumate* clarified this issue by holding that *qualified ERISA plans* were excluded from property of the bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code.

Since the two statutes are obviously in conflict, this court concludes, particularly in light of the purpose of the enactment of § 85–3–1(b)(iii), that this statute prevails as the most recent expression of the Legislature's will. Therefore, the debtors' exemption claims in the SEP–IRA's extend only to amounts reasonably necessary for the support of the debtors, as well as, any dependents of the debtors. An evidentiary hearing will be necessary to finalize this matter.

## III.

The next issue that is disputed by the parties is the extent of the application of § 85–3–11, Miss.Code Ann., which provides as follows:

The proceeds of a life insurance policy up to and including the sum of fifty thousand dollars ($50,000.00), including cash surrender and loan values, shall inure to the party or parties named as the beneficiaries thereof, free from all liability for the debts of the person whose life was insured, even though such person paid the premium thereon. In addition to the above exempted amount, all proceeds, including cash surrender and loan values, of a policy of life insurance owned by or assigned to another, shall inure to the beneficiary or beneficiaries named therein, subject to terms of any assignment, free from all liability for debts of the person whose life was insured.

The Office of the U.S. Trustee takes the position that this statute can only be utilized by the beneficiary or beneficiaries of a life insurance policy after the death of the insured. The debtors, to the contrary, take the position that they are able to claim the cash surrender values of their life insurance policies, not exceeding the sum of $50,000.00, as exempt assets.

This issue has not been addressed "head on" by any decision of the Mississippi Supreme Court. A decision which appears to be reasonably analogous, however, is found in *Bonds v. Bonds*, 409 So.2d 704 (Miss.1982). In this case, a divorced wife, in an effort to collect a judgment for alimony and child support, caused a writ of garnishment to issue against an insurer for the cash surrender values of three life insurance policies. The divorced husband, the owner of the policies, claimed the cash surrender values as exempt pursuant to § 85–3–11, and the Chancery Court agreed. However, the Mississippi Supreme Court reversed, but solely for the reason that the underlying judgment was for alimony and support, and not a debt that had arisen between an "ordinary debtor and creditor." The opinion seems to be fairly clear that had the obligation been one other than for alimony and support that the cash surrender values of the three policies could have been claimed as exempt by the owner.

The following language in the opinion, discussing the characteristics of a cash surrender value, is set forth as follows:

This principle of law applied to this case simply means the cash surrender value is still controlled or owned by Bonds until his death and does not answer the question presented here which is, does Section 85–3–11 exempt the cash surrender value from an action to garnish these funds to partially satisfy a decree for child *support* and *alimony*?

This precise question has not been dealt with to our knowledge in this state; however, this Court in *Dreyfus v. Barton*, 98 Miss. 758, 54 So. 254 (1910), interpreted what is now Mississippi Code Annotated section 85–3–13 (1972), not the exemption statute involved here, exempting certain proceeds of life insurance policies made payable to the estate or administrator:

The object of this statute is to secure to the insured a policy, not to exceed three thousand dollars, from liability to any creditor for any debt. This statute exempts the whole proceeds, or any part of it, whether the value accrues during the life or after the death of the insured. The cash surrender value of the policy is just as much "proceeds" of the policy, within the meaning of the statute, as would be the full amount after the death of the insured. In other words, when the person insured dies, the proceeds of the policy are exempt; while he lives, if the policy acquires a cash surrender value, this cash surrender value is "proceeds" within the meaning of the statute, and exempt so long as the value in either case does not exceed three thousand dollars. Any other construction of the statute would impair, if it did not destroy in some cases, the object of the statute.

\* \* \* \* \* \*

The law recognizes this, and also recognizes the fact that in the main the insurance policy is procured for the benefit of dependents, and undertakes to secure it to them, rather than to *creditors*. Per-

sons insure, frequently, for the very purpose of building up an estate which cannot be taken for the purpose of paying their debts, and frequently these policies of insurance *furnish the only protection to the family of the insured* against poverty and want. (98 Miss. at 768, 769, 54 So. at 255) (emphasis added.)

*Dreyfus, supra,* involved the ordinary contractual obligation by which creditors and debtors are created, not child support and alimony payments that are involved here.

*Id.* 409 So.2d at 705, 706.

The court must consider the literal language set forth in § 85–3–11. The words "including cash surrender and loan values" have no meaning to a beneficiary following the death of the insured. At that point, the entire face amount of the policy has become due and payable. The cash surrender value can only benefit the owner during his or her lifetime should the policy be surrendered. In such an event, the owner would then, indeed, be the "beneficiary" of the cash surrender value. Therefore, *this court concludes that unless the creditor's claim is in the nature of alimony, support, or something akin thereto, that the cash surrender value can be claimed as an exemption by the owner of the policy pursuant to § 85–3–11.* Were this not the case, the Mississippi Supreme Court would have simply stated that the owner of the insurance policies could not claim the cash surrender values as exempt under any circumstances. It did not do so. It clearly held the cash surrender values could not be claimed as exempt against a claim for alimony and support.

The objection of the Office of the United States Trustee to the debtors' exemption claims in the cash surrender values of the life insurance policies, to the extent that such exemption claims do not exceed $50,000.00 per debtor, is not well taken and is hereby disallowed.

An order will be entered consistent with this opinion.