In re Robert L. TAFT, Debtor.

Bankruptcy No. 190–13220–352.

United States Bankruptcy Court,
E.D. New York.

Aug. 18, 1994.

Robert W. Tauber, Brooklyn, NY, for debtor.

Yost & O'Connell, Flushing, NY, for Chapter 7 Trustee.

### DECISION ON OBJECTION TO CLAIMED EXEMPTIONS

MARVIN A. HOLLAND, Bankruptcy Judge.

Richard E. O'Connell, Esq., the Chapter 7 Trustee (hereinafter "Trustee") filed an objection to the claim of Robert L. Taft (hereinafter "Debtor"), of an exemption of $55,000 in his Simplified Employee Pension (hereinafter "TCC SEP") and $3,400 in the Debtor's Individual Retirement Account (hereinafter "TCC IRA"). Since the Debtor did not oppose the relief requested by the Trustee regarding the funds deposited in the TCC IRA, we uphold the Trustee's objection regarding the TCC IRA. *See In re Kramer,* 128 B.R. 707 (Bankr.E.D.N.Y.1991). We further hold the Debtor's interest in the TCC SEP to be property of the estate not exempt pursuant to 11 U.S.C. § 522(b)(2)(A).

This proceeding is subject to the bankruptcy court's jurisdiction under 28 U.S.C. §§ 1334(b), 157(a), and the Order of Referral of Matters to Bankruptcy Judges of this district. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTUAL BACKGROUND

The relevant facts are not disputed.

I. Prior to filing his petition in bankruptcy, and thereafter, the Debtor owned 51.6 percent of the stock of TCC Consulting Corp. (hereinafter "TCC") and served as the Chairman of its Board of Directors as well as its President.

II. On April 13, 1981, TCC set up the TCC SEP which is the subject of this decision.

III. TCC contributed not less than $24,500 to purchase individual retirement annuities on behalf of the Debtor from Guardian Insurance & Annuity Company, Inc.

IV. On August 1, 1990, the Debtor filed his petition in bankruptcy. On Schedule "C" of the petition, the Debtor claimed as exempt his $55,000 interest in the TCC SEP, pursuant to New York Civil Procedure Laws and Rules (hereinafter "CPLR") § 5205.

V. On January 28, 1992, the Trustee filed an objection to the above exemption.

VI. After the Trustee's objection was filed, this Court signed an order authorizing the amendment of Schedule "C" to claim 11 U.S.C. §§ 541(c)(2) and 522(b)(2)(A) as additional grounds for the claimed exemption.

### DISCUSSION

Simplified Employee Pensions (hereinafter "SEP") are described in section 408(k) of the Internal Revenue Code (hereinafter "I.R.C."). A SEP is a plan pursuant to which an employer makes direct contributions to its employees' individual retirement accounts or individual retirement annuities as defined under I.R.C. §§ 408(a) and (b). 26 U.S.C. § 408(k). An essential characteristic of a SEP is that the employee must be permitted to make withdrawals from the plan. 26 U.S.C. § 408(k)(4).[1]

The Debtor contends that his interest in the TCC SEP is not property of the estate pursuant to 11 U.S.C. § 541(c)(2), and if it is,

that such interest is property exempt pursuant to 11 U.S.C. § 522(b)(2)(A).

### I. THE DEBTOR'S INTEREST IN THE TCC SEP IS PROPERTY OF THE ESTATE

Section 541(a)(1) of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate which is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case ..." 11 U.S.C. § 541(a)(1).

However, 11 U.S.C. § 541(c) effectively prevents certain interests from becoming property of the estate by providing that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).[2]

It is not clear from the documents creating it whether the TCC SEP is a trust. If it is not a trust, the Debtor's interest in the TCC SEP would be property of the estate under 11 U.S.C. § 541(a)(1). Generally, an annuity contract creates a debtor-creditor relationship between the annuitant and the entity issuing the annuity, and not a trust relationship. See Appleman, *Insurance Law and Practice*, § 81 (1981 & 1991 Supp.); see also, *In re Kohler*, 96 Misc. 433, 441, 160 N.Y.S. 669, 675, (the court discussed the differences between annuities and trusts). While, according to Appleman, "[a]n annuity contract *ordinarily* creates a debtor-creditor relationship and not a trust relationship [emphasis added]", the possibility exists that in the nontypical case, an annuity might create, or be part of, a trust relationship.[3]

---

**1.** Section 408(k)(4) of the IRC provides:

(4) Withdrawals must be permitted. A simplified employee pension meets the requirements of this paragraph only if

(A) employer contributions thereto are not conditioned on the retention in such pension of any portion of the amount contributed, and

(B) there is no prohibition imposed by the employer on withdrawals from the simplified employee pension.

**2.** While most of the reported cases and the legislative history speak in terms of an exclusion of such trust property from property of the estate, this terminology is inaccurate. The debtor had few if any interests to become property of the

estate upon the filing. The debtor's pre petition interest in such a trust included neither right to transfer nor the right to anticipate. Thus it is not so much that the debtor's interest in the trust is excluded from the estate as it is that the debtor's interest in the trust is so severely limited by the enforceable applicable nonbankruptcy law (§ 541(c)(2)) that there are few if any interests available to become property of the estate. However, in order to avoid confusion, we adhere to the conventional terminology without agreeing with it.

**3.** *See Morter v. Farm Credit Services*, 937 F.2d 354 (7th Cir.1991) (applying New York law to conclude that certain annuity contracts under

For purposes of this decision, no lengthy analysis of annuity and trust law is necessary because we hold the Debtor's interest in the TCC SEP to be property of the estate even assuming *arguendo* that the TCC SEP were a trust. Accordingly, for purposes of this decision, the assumption is made that the TCC SEP is a trust.

The Debtor makes two arguments regarding 11 U.S.C. § 541(c)(2): (1) that the TCC SEP is an "employee pension benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA")[4], and as such, is excluded property pursuant to 11 U.S.C. § 541(c)(2); and (2) that the TCC SEP is a spendthrift trust under New York law, pursuant to CPLR § 5205(c), and as such, is excluded property pursuant to 11 U.S.C. § 541(c)(2).

Each of the Debtor's contentions will be addressed separately.

### A. *THE DEBTOR'S INTEREST IN THE TCC SEP DOES NOT QUALIFY FOR EXCLUSION UNDER ERISA*

■ "[ERISA] is a federal regulatory scheme enacted to ensure the protection and preservation of private pension plans. To encourage employers to participate in these plans, Congress coordinated various provisions of the [I.R.C.] with ERISA to provide favorable tax treatment." Helene Yvette Spielman Sherman, *ERISA Benefits Under the Bankruptcy Code and a New York Debtor's Rights,* 58 Brooklyn L.Rev. 177 (1992). "ERISA contains a variety of provisions designed to protect an employee's accrued benefits under a retirement plan which is covered by that statute." Mary F. Radford, *Exclusion and Exemption in Bankruptcy of Debtor's Interests in ERISA–Qualified Retirement Plans,* Norton Bankr L & Prac Monograph 1986, No. 2, p. 4. One such

provision is that, subject to certain exceptions, each pension plan covered by ERISA "shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

In *Patterson v. Shumate,* —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court addressed the issues of whether an anti-alienation provision in an ERISA-qualified pension plan constituted a restriction on transfer enforceable under applicable nonbankruptcy law for purposes of 11 U.S.C. § 541(c)(2), and whether, accordingly, a debtor's beneficial interest in such plan was excluded from the property of the bankruptcy estate. The pension plan in *Patterson* satisfied all the applicable requirements of ERISA and qualified for favorable tax treatment under I.R.C. § 401. *Id.* at ——, 112 S.Ct. at 2245. The pension plan contained an anti-alienation provision which provided that the debtor could not voluntarily transfer his interest and further provided that it was not subject to the claims of creditors. *Id.* at ——, 112 S.Ct. at 2247. The debtor claimed that his interest in the pension plan, therefore, was not property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). The Supreme Court agreed.

First, the Supreme Court held that the phrase "applicable nonbankruptcy law," as used in 11 U.S.C. § 541(c)(2), included federal law such as ERISA. *Id.* at ——, 112 S.Ct. at 2246. The Court stated that "[t]he natural reading of [11 U.S.C. § 541(c)(2) ] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Id.*

Second, the Supreme Court held that the pension plan's anti-alienation provision which prohibited both voluntary and involuntary transfer of the debtor's interest satisfied the literal terms of 11 U.S.C. § 541(c)(2) because

---

which the debtor was a beneficiary were spendthrift trusts under New York law); *see also In re Montgomery,* 104 B.R. 112 (Bankr.N.D.Iowa 1989); *but see In re Howerton,* 21 B.R. 621, 622 (Bankr.N.D.Tex.1982) ("Although under [I.R.C.] § 408(a) an individual retirement account may be held in trust, the Debtors hold individual retirement annuities established under [I.R.C.] § 408(b) ... [t]he statute distinguishes between a

trust and an annuity as two different methods of establishing retirement plans ... [s]ince neither [I.R.C.] § 408(b) nor the Debtors' contracts provide that the funds are to be placed in trust, [11 U.S.C.] § 541(c)(2) does not apply").

**4.** ERISA is codified at 29 U.S.C. §§ 1001–1461 and throughout the I.R.C., U.S.C. Title 26.

29 U.S.C. § 1056(d)(1) "clearly imposes a 'restriction on the transfer' of a debtor's 'beneficial interest' in [a] trust." *Id.* at ——, 112 S.Ct. at 2247.

Finally, the Court held that such restriction was enforceable under applicable non-bankruptcy law because ERISA created its own enforcement procedures whereby civil actions could be commenced to enforce the provisions of ERISA. *Id.*

*Patterson* has been interpreted as being limited in its application to situations where the pension plan at issue was "ERISA-qualified". For example, in *In re Henderson,* 167 B.R. 67, 69 (Bankr.N.D.Miss.1993), the Court, in holding that an interest in a SEP was property of the bankruptcy estate, held that *Patterson* was limited to cases concerning ERISA-qualified pension plans and that SEP's, although "qualified under § 408 of the [I.R.C.] . . . are not considered as being qualified under the provisions of [ERISA]." Thus, the *Henderson* Court held that "because SEP–IRA's are not ERISA qualified, this court cannot conclude that they are excluded from property of the bankruptcy estates pursuant to § 541(c)(2)." [5] *Id.* at 70; *but see In re Mehra,* 166 B.R. 393 (Bankr. E.D.Mo.1994) (without discussing whether SEP's are ERISA-qualified, the court held that under *Patterson,* the debtor's interest in his SEP's was not property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2)).

Notwithstanding *Henderson,* it remains unclear what is meant by the term "ERISA-qualified" and whether a SEP is "ERISA-qualified". In *In re Kaplan,* 162 B.R. 684, 691 (Bankr.E.D.Pa.1993), the court commented that "[a]lthough the Court, in *Patterson,* laid to rest the controversy over whether ERISA constituted 'applicable nonbankruptcy law,' the Court did not decide what types of pension plans constitute 'ERISA qualified' plans." Moreover, in *In re Hall,* 151 B.R. 412, 418 (Bankr.W.D.Mich.1993), the court noted that "the *Patterson* Court

may have intended any one of three interpretations for the term 'ERISA qualified' plan: (1) a plan subject to ERISA; (2) a plan subject to ERISA that contains an anti-alienation clause; or (3) a plan that is tax qualified under I.R.C. § 401(a), subject to ERISA, and has an anti-alienation provision as required by ERISA § 206(d)(1)."

As set forth below in detail, the TCC SEP satisfies two of the three possible interpretations for the term "ERISA-qualified" as delineated in *Hall.* However, unlike the *Henderson* court, we do not believe that *Patterson* is wholly inapplicable herein or that the issue of whether a SEP can be labelled "ERISA-qualified" is dispositive of whether the TCC SEP is property of the Debtor's estate. Rather, the focus of our inquiry must be on the language of 11 U.S.C. § 541(c)(2). In this regard, *Patterson* applies in this case at least for its holding that "applicable nonbankruptcy law" under 11 U.S.C. § 541(c)(2) includes ERISA. Thus, in our analysis of 11 U.S.C. § 541(c)(2), the dispositive issue is not whether the TCC SEP can be labelled "ERISA-qualified", but rather, whether the TCC SEP contains a restriction on the transfer of the Debtor's interest which is enforceable under ERISA. If the TCC SEP contains an anti-alienation provision enforceable under ERISA, the debtor's interest in the TCC SEP is not property of the bankruptcy estate, pursuant to 11 U.S.C. § 541(c)(2).

The Trustee concedes that the TCC SEP is "covered by ERISA, since it qualifies as an 'employee pension benefit plan' or 'pension plan.'" [6] *See In re Schlein,* 1992 WL 404741 *4, 1992 U.S. Dist. LEXIS 20206 *15 (M.D.Fla.1992), *aff'd* in part and *rev'd* in part on other grounds, 8 F.3d 745 (11th Cir.1993) ("SEP's fall within ERISA's definition of an employee pension benefit plan . . . [b]ased on these findings, . . . SEP's are governed by ERISA"); *but see Henderson,* 167 B.R. at 67–68 (the court, without analysis

---

5. See also *In re Kaplan,* 162 B.R. 684, 691 (Bankr.E.D.Pa.1993) ("despite the debtor-friendly result in *Patterson,* a plan must be ERISA qualified for a restrain on alienation to be enforceable under ERISA and thus for that decision to have any practical impact upon a debtor's pension plan").

6. There are two types of plans that are governed by ERISA. The first is an "employee welfare benefit plan" and the second is an "employee pension benefit plan." 29 U.S.C. § 1002(2)(A).

or authority, held that SEP's are not governed by ERISA).

Pursuant to 29 U.S.C. § 1056(d)(1), pension plans subject to ERISA must, as a general rule, contain an anti-alienation provision. However, certain other types of plans are not subject to the general rule. *See Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 836, 108 S.Ct. 2182, 2188–89, 100 L.Ed.2d 836 (1988) ("employee welfare benefit plan" is not subject to 29 U.S.C. § 1056(d)(1)). Pursuant to 29 U.S.C. § 1051, individual retirement accounts or individual retirement annuities (hereinafter, "IRA's"), described in I.R.C. § 408, are not subject to the anti-alienation provisions of 29 U.S.C. § 1056(d)(1). *Patterson*, —— U.S. at ——, 112 S.Ct. at 2249 ("Pension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual retirement accounts) are specifically excepted from ERISA's anti-alienation requirement"). Since SEP's are IRA's funded by employers, they are not subject to 29 U.S.C. § 1056(d)(1) and, therefore, SEP's are not required to contain an anti-alienation clause.

However, no ERISA provision specifically prohibits SEP's from voluntarily or gratuitously having anti-alienation provisions. The TCC SEP contains the following anti-alienation provision: [7]

> [t]o the extent permitted by law, neither the proceeds nor the payments under any [individual retirement annuity] shall be subject to encumbrance and, to the extent permitted by law, shall not be subject to claims of creditors or legal process ... the Owner may not change the ownership of this [C]ontract, nor may this Contract be sold, assigned, or pledged as collateral for a loan or as a security for the performance of an obligation ...

Thus, we must determine the extent, if any, to which this gratuitous anti-alienation provision is enforceable under ERISA.

ERISA contains its own enforcement provisions in Chapter 18, Part 5 of Title 29. In particular, 29 U.S.C. § 1132 provides in pertinent part:

(a) Persons empowered to bring a civil action

A civil action may be brought—

> (1) by a participant or beneficiary—
> (B) to recover benefits due to him under the terms of his plan, *to enforce his rights under the terms of the plan,* or to clarify his rights to future benefits under the terms of the plan ...
> (3) by a participant, beneficiary, or fiduciary (A) *to enjoin any act or practice which violates any provision* of this subchapter *or the terms of the plan....* [emphasis added].

These ERISA enforcement provisions apply to *all* plans subject to ERISA because 29 U.S.C. § 1132, by its express language, provides the means to enforce "the terms of the plan." Thus, 29 U.S.C. § 1132 appears to create a cause of action to enforce any valid provision of a SEP. There is no exclusion from 29 U.S.C. § 1132 for a voluntary anti-alienation provision and, therefore, the TCC SEP's anti-alienation provision appear to be enforceable under ERISA.

This appearance, however, is deceiving. The Supreme Court's holding in *Mackey* mandates a contrary conclusion.

In *Mackey*, a collection agency that had obtained a money judgment against participants in an employee welfare benefit plan governed by ERISA instituted an action seeking to garnish the debtor's plan benefits. An employee welfare benefit plan is similar to an SEP in that both types of plans are subject to ERISA, and neither is covered by 29 U.S.C. § 1056(d)(1). Thus, the anti-alienation provision in the *Mackey* ERISA plan, was not a statutorily mandated provision. The Supreme Court affirmed a decision of the Georgia Supreme Court which had held

---

7. The contract and other documents regarding the creation of the TCC SEP were not initially provided to this Court and therefore were not a part of either side's initial submission. Instead, this Court had to request that such documents be provided for informational purposes. Neither side objected. Accordingly, this Court is not obligated to address the contents of the documents regarding the creation of the TCC SEP that were not contained within the papers submitted. They have been analyzed and discussed herein in some detail, however, for purposes of rendering a more complete and informed decision.

that ERISA had pre-empted a Georgia statute exempting ERISA plans from garnishment by creditors.

The significance of *Mackey* is that in addition to holding that the Georgia statute had been pre-empted, the Supreme Court held that ERISA does not forbid garnishment of an ERISA welfare benefit plan, 486 U.S. at 841, 108 S.Ct. at 2191–92, declaring that *"[w]here Congress intended in ERISA to ... extend anti-alienation protections to a particular type of ERISA plan, it did so expressly in the statute."* [emphasis added]. *Id.* at 835, 108 S.Ct. at 2189. The Supreme Court noted that Congress did not subject employee welfare benefit plans to 29 U.S.C. § 1056(d)(1) and, therefore, held that "Congress did not intend to preclude state-law attachment of ERISA welfare benefit plans." *Id.* at 838, 108 S.Ct. at 2190.

Thus, *Mackey* mandates the conclusion that under ERISA the TCC SEP anti-alienation provision is not enforceable because Congress, by excluding SEP's from 29 U.S.C. § 1056(d)(1), intended that no protections be applicable to SEP's. *See Patterson,* —— U.S. at ——, 112 S.Ct. at 2249.[8]

In *Retirement Fund Trust of the Plumbing, etc., v. Franchise Tax Board,* 909 F.2d 1266 (9th Cir.1990), a case decided after *Mackey,* the Court expressly held that an anti-alienation provision in a "welfare plan" was not enforceable under ERISA. Although the Court did not discuss 29 U.S.C. § 1132, the Court noted that 29 U.S.C. § 1104(a)(1)(D), requires ERISA trustees to act as fiduciaries " 'in accordance with the documents and instruments governing the plan,' *but only 'insofar as such documents and instruments are consistent with the provisions of [ERISA].' "* [emphasis added]. *Retirement Fund Trust,* 909 F.2d at 1280. The Court held the anti-alienation provision

in the "welfare plan" was "inconsistent" with ERISA and therefore not enforceable. In so holding, the *Retirement Fund Trust* Court noted that "[o]ther courts examining this issue have held that anti-alienation provisions in the documents of a welfare trust cannot create a protection for the trust that Congress did not intend." *Id.*[9]

The *Retirement Fund Trust* Court noted that 29 U.S.C. § 1104(a)(1)(D) limits enforceability of an ERISA plan provisions to those specifically authorized by the statute. Therefore, not only are ERISA fiduciaries not obligated to enforce plan provisions inconsistent with ERISA, they are prohibited from doing so. Thus ERISA *prevents enforcement* of the anti-alienation provision in the TCC SEP.

Accordingly, the anti-alienation provision in the TCC SEP is not enforceable.

## B. *THE TCC SEP IS NOT A SPENDTHRIFT TRUST*

After arguing that his interest in the TCC SEP is excluded from the bankruptcy estate pursuant to ERISA, the Debtor alternatively contends that the TCC SEP is excluded as a spendthrift trust under New York law. We reject that position. The unrestrainable dominion which Congress, through the I.R.C., has given to the Debtor belies this contention.

A spendthrift trust is a trust in which, "the beneficiary is unable to transfer his right to future payments of income or principal *and his creditors are unable to subject the beneficiary's interest to the payment of their claims."* [emphasis added]. George T. Bogert, *Trusts* § 40 (6th ed. 1987).

The courts have uniformly held that pursuant to 11 U.S.C. § 541(c)(2), a debtor's beneficial interest in a spendthrift trust is excluded from the bankruptcy estate. *See, e.g., In*

---

**8.** The Supreme Court noted in dicta that "a debtor's interest in [pension plans that qualify for preferential tax treatment under 26 U.S.C. § 408] could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under 'applicable nonbankruptcy law,'...."

**9.** *See also In re Lucas,* 924 F.2d 597, 603 fn. 9 (6th Cir.1991) (Court cited *Retirement Fund Trust*

for the proposition that "an anti-alienation provision, if contained in a welfare benefit plan, would not be enforceable since the welfare plan cannot create a protection excluded by Congress"); *Local Union 212 International Brotherhood of Electrical Workers Vacation Trust Fund v. Local 212 IBEW Credit Union,* 549 F.Supp. 1299 (S.D.Ohio 1982).

*re Daniel*, 771 F.2d 1352, 1360 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985); *In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984); *In re Goff*, 706 F.2d 574, 582 (5th Cir.1983).

Notwithstanding New York's recognition and enforcement of spendthrift trusts through various provisions of the New York Estates, Powers and Trust Law (hereinafter "EPTL"), *see* EPTL §§ 7–1.5(a)(1) and 7–3.1, and the CPLR, the TCC SEP is not a spendthrift trust.

As noted earlier, SEP's are required to authorize the beneficiary to make withdrawals from the SEP funds for any reason, subject merely only to a minimal tax penalty. Thus the beneficiary of a SEP maintains total dominion and control over the funds which constitute the principal or corpus of the SEP.

The degree of control maintained by the Debtor in the funds of the TCC SEP is contrary to the very concept of spendthrift trusts. *See Kramer*, 128 B.R. at 709, (Chief Judge Duberstein, in holding that IRA's are not property exempt from the bankruptcy estate, commented that "the potential to exercise complete control over the [IRA] fund is inconsistent with the concept of a spendthrift trust."); *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989) ("the power of a beneficiary to compel total distribution of the corpus is antithetical to the nature of a spendthrift trust ... in a true spendthrift trust there is no possible voluntary action a beneficiary can take which would initiate an early termination of the trust or invasion of the corpus.") [10]

Spendthrift trusts originally were "created with a view to providing a fund for the maintenance of another, and at the same time securing it against his own improvi-dence or incapacity for self-protection." Bogert, *supra* § 40. Clearly, a SEP which permits total withdrawal of principal or corpus cannot be said to protect a beneficiary from his own improvidence.

Moreover, to hold that a SEP is a spendthrift trust under New York law would violate the principle enunciated by the New York Court of Appeals in *Ullman v. Cameron*, 186 N.Y. 339, 346, 78 N.E. 1074 (1906) where the court held:

> [it is] contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his creditors (*quoting, Hallet v. Thompson*, 5 Paige 583) ... [and] *as to my creditors, property is mine which becomes mine for the asking, and no words can make an instrument strong enough to hold it for me and keep it from them.* [emphasis added].

As one commentator has noted:

> [a] terrible inequity would be created if debtors were able to shield their funds from creditors in bankruptcy proceedings, then turn around and withdraw those same funds for their own benefit after discharge was complete.

Daniel Spitzer, *Contra Goff: Of Retirement Trusts and Bankruptcy Code § 541(c)(2)*, UCLA L.Rev. 1266, 1296 (1985)

We note that the overwhelming majority of courts which have addressed the issue have held that an ERISA plan in which a debtor has the ability to reach his interests in the plan are not spendthrift trusts. *See e.g., In re Martin*, 119 B.R. 297 (Bankr.M.D.Fla. 1990). Moreover, even where the trust was not part of an ERISA plan, it has been held that a debtor's ability to reach trust assets rendered the trust non-spendthrift. *See In*

---

**10.** *See also In re Harline*, 950 F.2d 669 (10th Cir.1991) (interpreting Utah law, the court, in holding that the power of a beneficiary to "amend or terminate [a] plan is fatal to spendthrift status" noted that "[t]raditionally, there are three requirements for a spendthrift trust: (1) the settlor may not be a beneficiary of the trust plan, (2) the trust must contain a clause barring any beneficiary from voluntarily or involuntarily transferring his interest in the trust, and (3) the debtor-beneficiary must have no present domin-ion or control over the trust corpus"); *In re Kellas*, 113 B.R. 673 (D.C.Ore.1990) (interpreting Colorado law, the court held that "[a] valid spendthrift trust ... is one that ... [h]as severely limited the extent of dominion and control a beneficiary possesses over the trust corpus"); *In re Brown*, 86 B.R. 944, 946 (N.D.Ind.1988) (interpreting Indiana law, the court held that "to qualify as a spendthrift trust, it must be shown that ... that debtor beneficiary has no present dominion or control over the plan corpus").

*re Herzig,* 167 B.R. 707 (Bankr.D.Mass.1994). The Court in *Herzig,* in holding that a trust in which the debtor could cause the corpus of the trust to be distributed to him was not a spendthrift trust under New York law and was therefore property of the bankruptcy estate, held:

> the law of spendthrift trusts does not permit a beneficiary to retain both the protection of the spendthrift clause and the right to take action which would result in a ... distribution from the plan.

*Id.* at 710.

We further note that our decision herein is in accord with the holding of *European American Bank & Trust Company v. Frenkel,* 147 Misc.2d 423, 555 N.Y.S.2d 1016 (1990), which is particularly significant for the reason that the Debtor relies on CPLR §§ 5205(c)(1) [11, 12], (c)(2) and (c)(3) [13] in asserting that the TCC SEP is a spendthrift trust under New York law and *Frenkel* addressed the applicability of CPLR § 5205(c) to SEP's.

In *Frenkel,* the defendants had moved for an order vacating an attachment on their retirement accounts contending that CPLR §§ 5205(c)(1) and/or 5205(c)(2) prevented creditors from reaching their interests in their SEP's. The *Frenkel* Court rejected the

defendant's arguments holding the SEP's to be subject to the claims of creditors.

The *Frenkel* Court first addressed CPLR § 5205(c)(1), holding that CPLR § 5205(c)(1) does not exempt an individual's interest in an SEP from the claims of creditors, stating that "[t]his type of fund [the SEP] with no actual restriction on employee withdrawals does not constitute the type of ordinary trust which appears to be contemplated under CPLR 5205(c)(1) [since] ... [t]he control of the fund rests essentially with defendants." *Frenkel,* 147 Misc.2d at 424, 555 N.Y.S.2d 1016.

The *Frenkel* Court then addressed CPLR §§ 5205(c)(2) and (c)(3). The Court held that these sections which create a conclusive presumption that certain retirement plans are spendthrift trusts, *see In re Kleist,* 114 B.R. 366 (Bankr.N.D.N.Y.1990), are not applicable to SEP's, stating:

> [a]s CPLR 5205(c)(2) was recently amended in 1989 and there was no mention of a "simplified employee pension fund", the court may not exclude this fund as an allowable trust exemption under this statute.

Although the *Frenkel* court never used the term "spendthrift trust", its holding that a SEP enjoys no exemption under CPLR § 5205(c) stands for the proposition, and sup-

---

**11.** CPLR § 5205(c)(1), which provides the New York exemption for spendthrift trusts with respect to trust principal or corpus, *In re Mann,* 134 B.R. 710, 714 (Bankr.E.D.N.Y.1991); *In re Nudo,* 147 B.R. 68, 70 (Bankr.N.D.N.Y.1992), provides:

> all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.

**12.** If the principal or corpus of a trust is exempt property pursuant to CPLR § 5205(c)(1), CPLR § 5205(d)(1) provides that ninety percent (90%) of the income from such trust is also exempt property, subject to the limitation set forth therein.

**13.** CPLR §§ 5205(c)(2) and (c)(3) provide in relevant part:

> § 5205 Personal property exempt from application to the satisfaction of money judgments.
> (c) Trust exemption.

2. For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended ... shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is ... (iii) a shareholder of the corporation sponsoring the retirement or other plan.

3. All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in paragraph two of this subdivision *shall be conclusively presumed to be spendthrift trusts* under this section and the common law of the state of New York for all purposes, including but not limited to, all cases arising under or related to a case under ... the United States Bankruptcy Code, as amended. [emphasis added].

ports our holding, that a SEP is not a spendthrift trust under New York law. If, as the *Frenkel* Court held, the principal of a SEP is not exempt under § 5205(c)(1), it follows that its income is not exempt. *See* CPLR § 5205(d)(1). Thus, under *Frenkel,* the Debtor's entire beneficial interest in the TCC SEP is subject to the claims of creditors and, therefore, by definition, it can not be a spendthrift trust. Moreover, under *Frenkel,* the TCC SEP does not qualify as a spendthrift trust under CPLR §§ 5205(c)(2) and (c)(3) because these sections do not apply to SEP's.[14]

## II. THE DEBTOR'S INTEREST IN THE TCC SEP IS NOT EXEMPT PROPERTY

■ Having concluded that the Debtor's interest in the TCC SEP is property of the bankruptcy estate, we must determine whether such interest is property exempt from the estate. Section 522(b)(1) of the Bankruptcy Code allows states to "opt out" of the federal exemptions provided in 11 U.S.C. § 522(d). Pursuant to New York Debtor and Creditor Law § 284, New York has "opted out" of the federal exemption scheme of 11 U.S.C. § 522(d). N.Y.Debt. & Cred.Law § 284 (McKinney 1990). By "opting out," New York has restricted its domiciliaries to the exemptions provided for under

state law and federal law, other than 11 U.S.C. § 522(d). 11 U.S.C. § 522(b)(2)(A).[15]

■ The Debtor has made two arguments regarding the exemption of his SEP interest. Originally, the Debtor claimed that his interest in the TCC SEP was exempt pursuant to CPLR § 5205. Section 282 of the New York Debtor and Creditor Law, which provides a list of all the permissible exemptions that a New York domiciliary is entitled to as a debtor under the Bankruptcy Code, provides in relevant part:

> [u]nder [11 U.S.C. § 522] an individual debtor domiciled in this state may exempt from the property of the estate, to the extent permitted by subsection (b) thereof only (i) personal ... property exempt from application to the satisfaction of money judgment under section 5205 ... of the [CPLR]....

N.Y.Debt. & Cred.Law § 282 (McKinney 1990).

Ordinarily, if a debtor's interest in property is exempt property pursuant to CPLR § 5205, such interest would be exemptible from property of the estate. For purposes of this decision, the only relevant New York state exemptions under CPLR § 5205 are CPLR §§ 5205(c)(1) and 5205(c)(2) and (c)(3). However, as set forth above, the Debtor's interest in the SEP is not "exempt" under New York law pursuant to CPLR §§ 5205(c)(1) and 5205(c)(2) and (c)(3).[16]

14. We note that in addition to the reasoning in *Frenkel,* the TCC SEP is not rendered spendthrift by CPLR §§ 5205(c)(2) and (c)(3) because a SEP is not a plan that qualifies under I.R.C. § 401. To qualify under CPLR §§ 5205(c)(2) and (c)(3), a retirement or other plan must qualify under I.R.C. § 401. SEP's do not qualify under I.R.C. § 401. Rather, SEP's are plans qualified under I.R.C. § 408. As the Trustee correctly noted in his responses to questions posed by this Court, the tax consequences for a plan that qualifies under I.R.C. § 401 "include the following: (1) the plan is exempt, under [IRC] § 501, from taxation; (2) contributions to the plan are deductible by the employer under [I.R.C.] § 404(a)(1)(A); and (3) distributions out of the plan are taxable to the employee in the year of distribution under [I.R.C.] § 402." SEP's on the other hand, "are exempt from tax under [I.R.C.] § 408(e)(1) ...; taxability upon distribution is provided for in [I.R.C.] § 408(d)(1) ...; and deductibility by the employer of contributions to a SEP are governed by [I.R.C.] § 404(h)."

15. Since no party has raised the question, we assume both the constitutionality and the validity of New York's opt-out statute which, pursuant to 11 U.S.C. § 522(b)(1) not only denies New York debtors the exemptions which would otherwise be available to them under § 522(d) but which then proceeds to provide New York debtors in bankruptcy additional exemptions not available to New York's non bankrupt debtors.

16. It is important to recognize that we are discussing only the effect of New York's exemption statute upon an individual debtor in bankruptcy. Ordinarily, if a debtor's interest in property is exempt property pursuant to CPLR § 5205, it may be exemptible in bankruptcy. However, 11 U.S.C. § 522 permits exemptions only to individuals and only when properly claimed. Were the Debtor's interest in the TCC SEP a spendthrift trust under New York CPLR § 5205(c), the Debtor's interest, although exempt property in the non-bankruptcy context under state law, would be property, not exempt, but rather, excluded

In addition to asserting that his interest in the SEP is exempt pursuant to New York State law, the Debtor claims that such interest is exempt pursuant to 11 U.S.C. § 522(b)(2)(A)'s exemption based on "other federal law."

The Debtor contends that the anti-alienation provisions of ERISA, 29 U.S.C. § 1056(d)(1), "create an exemption in bankruptcy which is enforceable under the 'other federal law' provision of § 522(b)(2)(A) of the Bankruptcy Code." However, we have already noted that SEP's are not subject to the requirements of 29 U.S.C. § 1056(d)(1). In addition, pursuant to the holdings of *Mackey* and *Retirement Fund Trust*, ERISA does not protect SEP's from the claims of creditors. Moreover, as set forth above, voluntary anti-alienation provisions in a SEP are not enforceable under ERISA. Accordingly, even if ERISA constituted "other federal law" under 11 U.S.C. § 522(b)(2)(A), an issue that this Court need not address, ERISA does not provide a federal exemption for SEP's.

Thus, we reject the Debtor's contention that his interest in the TCC SEP is exempt pursuant to CPLR § 5205 and 11 U.S.C. § 522(b)(2)(A)'s exemption based on "other federal law".[17]

## CONCLUSIONS OF LAW

I. The TCC SEP, although governed by ERISA, is not subject to ERISA's anti-alienation requirements.

II. The voluntary anti-alienation provision contained in the TCC SEP is not enforceable under ERISA and, therefore, the Debtor's interest in the TCC SEP is not excluded from the bankruptcy estate pursuant to ERISA.

III. The TCC SEP is not excluded from the bankruptcy estate pursuant to New York state spendthrift trust law because it is not a spendthrift trust.

IV. Thus, the TCC SEP is property of the bankruptcy estate.

V. The TCC SEP is not exempt property under New York state law or under 11 U.S.C. § 522(b)(2)(A)'s exemption based on "other federal law".

VI. The Trustee's objections to the debtor's claimed exemption or exclusion with regard to the TCC SEP are sustained.

Settle an Order consistent with this decision within ten (10) days.

---

from the bankruptcy estate for bankruptcy purposes. *See Kleist,* 114 B.R. at 369 ("[t]he legal effect of property held in a spendthrift trust [pursuant to CPLR § 5205(c)] operates not as an exemption, but as an exclusion from property of the estate."). The difference between exempt property and excluded property is significant because excluded property never becomes property of the estate while exemptible property becomes property of the estate upon the commencement of the case (11 U.S.C. § 541(a)) subject to subsequent exclusion only if the debtor is an individual whose exemption is properly claimed. 11 U.S.C. § 541. This distinction is important in analyzing New York State decisions since such interests,

while exempt in the non-bankruptcy context pursuant to the state exemption statutes, are excluded in bankruptcy pursuant to 11 U.S.C. § 541(c)(2). The fascinating consequences of this incongruity upon a corporate debtor-beneficiary of a spendthrift trust which is not entitled to claim an exemption in bankruptcy is beyond the scope of this decision.

17. We note that an issue may exist as to whether the Debtor's interest may be exempt pursuant to section 282(iii)(2)(e) of the New York Debtor and Creditor Law. However, because the Debtor failed to raise the issue in this proceeding we will not consider it.