NOT FOR PUBLICATION

SEP 7 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ORCHID CHILD PRODUCTIONS, LLC,<br>　　　　　　　Debtor. | BAP No. CC-23-1011-FLS<br><br>Bk. No. 2:20-bk-21080-RK |
| WHOSE DOG R U PRODUCTIONS, INC.,<br>　　　　　　　Appellant,<br>v.<br>EDWARD M. WOLKOWITZ, Chapter 7 Trustee,<br>　　　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Robert N. Kwan, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Orchid Child Productions, LLC ("Orchid Child")

had an agreement with actor James E. Franco's company Whose Dog R U

Productions, Inc. ("Whose Dog") to produce a documentary about

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.88

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Mr. Franco's life. When disputes arose, Whose Dog demanded arbitration. Before the parties could come to any resolution, Orchid Child filed for bankruptcy protection. Whose Dog, concerned about what the chapter 7 trustee would do with the footage from the unfinished documentary, sought relief from the automatic stay to resume the arbitration. The bankruptcy court denied stay relief, and Whose Dog appealed.

We agree with the bankruptcy court that Whose Dog did not establish cause to lift the automatic stay. We therefore AFFIRM.

## FACTS

### A.    Prepetition events

### 1.    The film production agreement

Mr. Franco is a Hollywood actor, producer, and director. Whose Dog is the company through which he renders services.

In June 2013, Orchid Child and Whose Dog entered into a "loanout" agreement (the "Agreement") to film, produce, market, and distribute a documentary about Mr. Franco's life (the "Documentary"). Orchid Child's principal and sole managing member, Lisa Vangellow, agreed to direct and produce the Documentary. Whose Dog agreed to make Mr. Franco available for Orchid Child to film, record, and photograph him. Orchid Child retained approval and control of the Documentary, but Mr. Franco had the right to approve the final cut of the Documentary. Thereafter, Orchid Child agreed to assign all unused footage to Mr. Franco.

Under the Agreement, Orchid Child was the sole and exclusive

2

owner of all right, title, and interest in (1) the results and proceeds of Mr. Franco's services, (2) the Documentary and the material upon which it was based, and (3) all distribution and exhibition rights regarding the Documentary. It could not assign its rights under the Agreement except for certain purposes.

The Agreement required the parties to submit any dispute to binding arbitration.

Orchid Child apparently filmed a substantial amount of footage of Mr. Franco, his friends, and his associates (the "Footage"). However, Ms. Vangellow never completed the Documentary, Orchid Child never submitted a final cut of the Documentary to Mr. Franco, and he never granted his approval of the Documentary.

## 2. Arbitration

Disputes arose over the Agreement. Among other things, Whose Dog alleged that Orchid Child breached the Agreement when it failed to submit a proposed final cut to Mr. Franco and, without Whose Dog's or Mr. Franco's knowledge or approval, secretly assigned the Agreement to another entity, sought to raise financing, and used or threatened to use Mr. Franco's name and likeness. Conversely, Orchid Child alleged that Mr. Franco breached the Agreement by anticipatorily repudiating his obligations under the Agreement when he allegedly said that he would never approve a final cut of the Documentary.

In May 2020, Whose Dog filed a demand for arbitration seeking

declaratory relief that Orchid Child breached the Agreement, Whose Dog did not, and Orchid Child did not have the right to use Mr. Franco's name and likeness without his approval.

Orchid Child filed a counterclaim against Whose Dog and Mr. Franco seeking damages for Mr. Franco's anticipatory breach of contract.

## B.    Bankruptcy events

While the arbitration was pending, Orchid Child filed a chapter 7 bankruptcy petition. It scheduled as its only asset the rights, title, and interest in the Documentary, including the Agreement.[2]

Creditors filed seven proofs of claim totaling approximately $1.4 million. Whose Dog filed a proof of claim for an undetermined amount for "declaratory relief and attorneys' fees." Mr. Franco filed a proof of claim for $1 million for "[d]amages resulting from misuse of name and likeness." The other claims were: the Franchise Tax Board's claims for $7,790.84 and $2,690.58; Ms. Vangellow's claim for $180,000 for "[s]ervices performed and loan for production"; Ms. Vangellow's stepfather's claim for $191,443.77 for a business loan; and U.S. Bank's claim for $26,768.60 for credit card debt.

In summer 2021, the chapter 7 trustee, Edward M. Wolkowitz ("Trustee"), filed a motion to set sale procedures for the sale of the Footage. Whose Dog opposed the sale motion.

While the sale motion was pending, Whose Dog filed an adversary

---

[2] Orchid Child disclosed that it had assigned the Agreement as of April 11, 2015 to another of Ms. Vangellow's companies, The Mechanical Butterfly, LLC.

complaint for declaratory, injunctive, and equitable relief. It sought declaratory relief that Mr. Franco and Whose Dog owned the Footage and the Trustee did not have any right to sell or convey the Footage to a third party. It also sought prospective injunctive relief prohibiting the Trustee from selling the Footage.

The adversary proceeding remains open.

**C.  Motion for relief from the automatic stay**

Whose Dog also filed a motion for relief from the automatic stay to resume the arbitration ("Motion"). It argued that cause existed to lift the automatic stay because arbitration was necessary to "determine ownership rights" related to the Agreement and that judicial economy favored lifting the automatic stay.

It also argued that the bankruptcy court "may not have jurisdiction over these non-core proceedings" because the dispute involved state law contract claims. It posited that the bankruptcy court would have to abstain from adjudicating the non-core matters.

Whose Dog also took the position that the Federal Arbitration Act ("FAA") favors enforcement of arbitration agreements and creates a strong presumption in favor of arbitration.

Finally, Whose Dog contended that Orchid Child filed the bankruptcy petition in bad faith because it only sought to stay the arbitration and had few non-insider unsecured creditors.

The Trustee opposed the Motion and argued that there was no cause

to lift the automatic stay. He contended that relief from stay would interfere with the bankruptcy court's exclusive jurisdiction over estate property, including Orchid Child's counterclaims, the Footage, and the associated copyright. The Trustee also argued that Whose Dog failed to demonstrate that Orchid Child abused the bankruptcy process.

In reply, Whose Dog argued that the dispute over ownership of the Footage should first be decided in arbitration. It contended that the Trustee should be precluded from marketing any of the estate's interest in the Footage until ownership is determined in arbitration. Finally, it argued that the non-insider claims were minimal.

After two hearings and supplemental briefing, the bankruptcy court determined that stay relief was not appropriate. It held that the issues presented by the parties implicated a core proceeding: whether an asset is property of the estate and whether an estate asset can be sold under § 363. It also found that the arbitration provision of the Agreement conflicted with the Bankruptcy Code.

The court rejected Whose Dog's argument that Orchid Child filed the bankruptcy petition in bad faith and noted that the non-insider creditors' claims were "not insubstantial." It also stated that denying the Motion would avoid piecemeal litigation and facilitate disposition of the sole estate asset.

The bankruptcy court entered an order denying the Motion. Whose Dog timely appealed.

6

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in determining that Whose Dog failed to establish cause to lift the automatic stay.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision to grant or deny relief from the automatic stay under § 362(d). *Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1084 n.9 (9th Cir. 2000) (en banc); *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 919 (9th Cir. BAP 2009). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.    Section 362(d)(1) allows a court to grant relief from the automatic stay "for cause."

The filing of a bankruptcy petition creates an automatic stay under

§ 362(a), which stays specific acts against the debtor, the debtor's property, and the property of the estate, including "commencement or continuation . . . of a judicial . . . or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." § 362(a)(1).

Section 362(d) allows the court to grant relief from the automatic stay in certain circumstances. Section 362(d)(1) provides that the bankruptcy court may grant a creditor relief from stay "for cause." "What constitutes 'cause' for granting relief from the automatic stay is decided on a case-by-case basis." *In re Kronemyer*, 405 B.R. at 921. "Congress left to the judgment of bankruptcy courts (via the reference) the decision about where a claim or action should be litigated by leaving the concept of 'cause' to terminate, annul, modify, or condition the stay purposefully undefined and flexible." *Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 394 (9th Cir. BAP 2020). In assessing whether relief from stay should be granted to allow state court proceedings to continue, the bankruptcy court should consider judicial economy, the expertise of the state court, prejudice to the parties, and whether exclusively bankruptcy issues are involved. *In re Kronemyer*, 405 B.R. at 921 (describing nonexclusive factors for the bankruptcy court to consider and deeming "appropriate" the factors articulated in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)). "In weighing the relevant factors, the bankruptcy court is not required to give equal weight to all

factors. In fact, the balancing of potential harm to the creditor on the one hand and to the debtor and the bankruptcy estate on the other hand frequently is dispositive." *Lapierre v. Advanced Med. Spa Inc. (In re Advanced Med. Spa Inc.)*, BAP No. EC-16-1087-KuMaJu, 2016 WL 6958130, at *4 (9th Cir. BAP Nov. 28, 2016).

The movant must "establish a prima facie case that 'cause' exists for relief under § 362(d)(1)." *Id.* If the movant is successful, "the burden shifts to the debtor to show that relief from the stay is unwarranted. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." *Id.*

**B.     Whose Dog did not establish cause to lift the automatic stay.**

Whose Dog argues that the bankruptcy court erred by refusing to grant stay relief to let the arbitration proceed. We disagree; the arbitration raised core bankruptcy issues that were within the jurisdiction of the bankruptcy court, and lifting the stay would result in substantial "interference with the bankruptcy case" and hinder "judicial economy." *In re Curtis*, 40 B.R. at 799-800. The bankruptcy court did not abuse its discretion when it decided that its adjudication of these issues was best and did not run afoul of the federal policy favoring arbitration.

**1.     Core bankruptcy issues**

Whose Dog argues at length that the arbitration did not raise "core" bankruptcy issues.

In the first place, we reject any contention that the bankruptcy court

must always grant relief from the stay to permit arbitration of "non-core" issues. Although the distinction between core and non-core proceedings is a relevant factor, it is not dispositive. Whether "exclusively bankruptcy issues are involved" is only one of the factors the bankruptcy court may weigh when deciding whether to grant stay relief. *See Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 353 (9th Cir. 1996) (holding that the bankruptcy court has discretion to deny stay relief, even when faced with non-core state claims).

In any event, the bankruptcy court correctly held that the arbitration claims presented "core" issues. To understand this issue, one must consider the bankruptcy court's complicated jurisdictional structure.

### a. "Core" versus "non-core"

28 U.S.C. § 1334 confers bankruptcy jurisdiction on the federal district court. Subsection (a) gives the district court exclusive subject matter jurisdiction over "all cases under title 11." Subsection (b) gives the district court nonexclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Subject to an exception that does not apply here, 28 U.S.C. § 1334(e)(1) gives the district court "exclusive jurisdiction" of all property of the debtor as of the filing date and of all property of the estate.

Section 157(a) permits the district court to refer to the bankruptcy court any cases and proceedings that are within the grant of bankruptcy jurisdiction. The Central District of California has exercised this authority.

10

*See* United States District Court for the Central District of California General Order 13-05 (July 1, 2013).

But the district court's reference of cases and proceedings to the bankruptcy court does not always give the bankruptcy court power to enter final judgment in such cases and proceedings. Rather, the authority to enter final judgment rests sometimes with the district court and sometimes with the bankruptcy court.

28 U.S.C. § 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" that are referred to it by the district court. This means that the bankruptcy court can enter final judgments if the dispute is a "core proceeding," i.e., it either "arises under" the Bankruptcy Code or "arises in" a bankruptcy case.

28 U.S.C. § 157(b)(2) contains a non-exclusive list of core bankruptcy proceedings. Some of the broadest categories on the list are called the "catchall" categories: 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") and (O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship").

We have stated that

> [a] proceeding "arises under" title 11 if it presents claims for relief created or controlled by title 11. In contrast, the claims for relief in a proceeding "arising in" a title 11 case are not explicitly created or controlled by title 11, but such claims

11

nonetheless would have no existence outside of a bankruptcy case.

*Certain Underwriters at Lloyds v. GACN, Inc. (In re GACN, Inc.)*, 555 B.R. 684, 693 (9th Cir. BAP 2016) (citation omitted). Stated another way, "a core proceeding is one that 'invokes a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010) (quoting *In re Gruntz*, 202 F.3d at 1081).

Proceedings in which the bankruptcy court cannot enter final judgment (i.e., proceedings that are not "core proceedings," but are still within the bankruptcy jurisdiction because they are "related to" the bankruptcy case) are called "non-core" proceedings. 28 U.S.C. § 157(c). Proceedings are "related to" a bankruptcy if "they do not depend on the Bankruptcy Code for their existence and they could proceed in another court." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). In a non-core proceeding, the bankruptcy court can enter a final judgment only if all parties consent; otherwise, the bankruptcy court must enter proposed findings and a recommended judgment for the district court's de novo review. 28 U.S.C. § 157(c).

### b.    Whose Dog's claims

With this structure in mind, we have no difficulty concluding that Whose Dog's claims constituted a core proceeding: they concerned administration of the bankruptcy estate, the sale of estate assets, and the

12

claims allowance process.

Whose Dog's demand for arbitration sought, among other things, a determination that Orchid Child "does not have the right to advertise, distribute, sell and/or otherwise exploit the [Documentary]" and "does not have the right to use Franco's name and likeness . . . ." A decision in the arbitration in favor of Whose Dog would directly affect the Trustee's ability to administer the estate and liquidate estate assets; because the claims literally fall under 28 U.S.C. § 157(b)(2)(A) and (O), they are core proceedings.[3] *See In re Harris*, 590 F.3d at 740; *see also John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir. 1990) (holding, in a turnover context, that "[s]ince an action to obtain property of the estate would necessarily involve a determination regarding 'the nature and extent of property of the estate,' the action would also be a matter 'concerning the

---

[3] The Ninth Circuit stated that "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catchall provisions, sections § 157(b)(2)(A) and (O)." *Piombo Corp. v. Castlerock Props. (In re Castlerock Props.)*, 781 F.2d 159, 162 (9th Cir. 1986). But the "state law claims" at issue in *Castlerock* were claims by the debtor against a third party, not claims by a creditor against the debtor. There are serious constitutional concerns when a court lacking Article III status decides garden-variety state law claims by a debtor against another person. *See Stern v. Marshall*, 564 U.S. 462, 487 (2011); *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 (1982). These concerns do not arise when a creditor is asserting a claim against a debtor and a bankruptcy estate. In any event, the Ninth Circuit has subsequently clarified that, while "the otherwise broad 'catchall' provisions of bankruptcy court core jurisdiction should be interpreted narrowly," the catchall provisions suffice if a particular matter **literally** falls within them. *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 740 (9th Cir. 2009). "[T]he sale of bankruptcy estate assets *is* an administrative activity of the bankruptcy trustee." *Id.*

administration of the estate,' and, therefore, a core proceeding").

Furthermore, such a proceeding is a "core" proceeding because it implicates "orders approving the sale of property" and falls literally under 28 U.S.C. § 157(b)(2)(N). One of the Trustee's main responsibilities is to administer the estate by marshaling assets of the estate and selling the assets to pay creditors. *See In re KVN Corp.*, 514 B.R. 1, 5 (9th Cir. BAP 2014) ("Under § 704(a)(1), . . . the trustee's primary job is to marshal and sell the assets, so that those assets can be distributed to the estate's creditors. Indeed, a core power of a bankruptcy trustee under § 363(b) is the right to sell 'property of the estate' for the benefit of a debtor's creditors." (cleaned up)). Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." The trustee's power to sell estate assets stems from the Bankruptcy Code, not state law, and does not exist outside of the bankruptcy context. *See In re GACN, Inc.*, 555 B.R. at 698 (holding that the sale of bankruptcy estate assets is an administrative activity of the bankruptcy trustee and is therefore a core proceeding). Therefore, sales of estate property both "arise under" the Code and "arise in" the bankruptcy case.

Some of the issues presented in the arbitration are central to the bankruptcy case because, under this Panel's precedents, the bankruptcy court must determine whether an asset is property of the estate before permitting the trustee to sell it. *See Darby v. Zimmerman (In re Popp)*, 323

14

B.R. 260, 268-70 (9th Cir. BAP 2005) (reversing the sale order because "the bankruptcy court should have insisted that the Trustee finish determining ownership before stepping outside the [adversary proceeding] to sell the Property");[4] *Hey v. Silver Beach, LLC (In re Silver Beach, LLC)*, BAP No. NV-09-1049, 2009 WL 7809002, at \*7 (9th Cir. BAP Nov. 3, 2009) (stating that, "[b]efore the bankruptcy court may authorize a sale under authority of section 363(b)(1), the court must determine whether the estate actually has an interest in the property to be sold" and reversing the sale order because "interests of [third parties] should have been determined by the bankruptcy court before authorizing the sale"). The issues raised in the arbitration – namely, the estate's rights under the Agreement – were intertwined with the Trustee's ability to sell estate assets under § 363 and thus "arise in" the bankruptcy case.

Additionally, Whose Dog's proof of claim subjected it to the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(B). The Ninth Circuit has explained that "[t]he allowance and disallowance of

---

[4] *Popp* relied largely on the Ninth Circuit's decision in *Warnick v. Yassian (In re Rodeo Canon Development Corp.)*, 362 F.3d 603 (9th Cir. 2005), which held that a bankruptcy court could not authorize a sale of property under § 363 until the court determined whether the estate had an ownership interest in the property. However, the Ninth Circuit withdrew that opinion on March 8, 2005 because "[t]he ownership dispute over the property appears to have been resolved." *Warnick v. Yassian* (*In re Rodeo Canon Dev. Corp.*), Case Nos. 02-56999, 02-57203, 2005 WL 663421, at \*1, 126 F. App'x 353  (9th Cir. Mar. 8, 2005), *as amended on denial of reh'g* (Apr. 1, 2005). Nevertheless, *Popp* appears to remain sound law and has been subsequently cited in our circuit and other jurisdictions.

claims against the estate is a core proceeding. . . . Once [creditor] filed its proof of claim, it subjected its claim to the core jurisdiction of the bankruptcy court. It was within the sound discretion of the bankruptcy court to deny relief from the automatic stay." *In re Conejo Enters., Inc.*, 96 F.3d at 353. Similarly, in this case, Whose Dog filed a proof of claim in the bankruptcy court, attaching the demand for arbitration and Agreement as the basis of its claim. Under *Conejo Enterprises*, this subjected the arbitration claims to the bankruptcy court's core jurisdiction.

Whose Dog argues the arbitration could not be a "core" proceeding because **ownership** of the Footage was not at issue in the arbitration. This is an unduly narrow view. Whose Dog wants to limit the marketing and sale of Orchid Child's rights in the Agreement. Those rights belong to Orchid Child's bankruptcy estate. Resolving the estate's "right to advertise, distribute, sell and/or otherwise exploit the [Documentary]" and "right to use Franco's name and likeness" is necessary to the adjudication of the Trustee's "sale of estate property" and is a core proceeding under 28 U.S.C. § 157(b)(2)(N). This factor weighs against granting relief from the automatic stay.[5]

2.    **Judicial economy**

Whose Dog also argues that judicial economy dictates that the

---

[5] Whose Dog filed an adversary proceeding seeking essentially the same relief as that sought in the arbitration. This is another way in which Whose Dog voluntarily subjected the adjudication of its claims to the jurisdiction of the bankruptcy court.

bankruptcy court should have lifted the stay. It contends that the parties were well into discovery in the arbitration, the dispute involved matters of state law, the issues were best adjudicated in arbitration, and the parties would not be unduly prejudiced by litigating in the arbitration.

The bankruptcy court did not abuse its discretion when it held that deciding all issues concerning the scope of estate property, the Trustee's ability to sell that property, and the sale of that property in the bankruptcy court promotes judicial economy. *See, e.g., In re Conejo Enters., Inc.*, 96 F.3d at 353. ("By staying the state action, the bankruptcy court promoted judicial economy and efficiency by minimizing the duplication of litigation in two separate forums and preventing litigation of a claim that may have been discharged in bankruptcy proceedings."). The court did not err when it held that this factor also weighs against granting stay relief.

### 3.    Prejudice

Whose Dog does not argue that it will suffer prejudice if forced to litigate the arbitration issues in the bankruptcy court. Conversely, the Trustee represented that arbitration would be prohibitively expensive and the estate had no resources to participate in the arbitration. The bankruptcy court did not err in holding that this favors denying stay relief.

### 4.    Expertise of the arbitrator

Neither party takes issue with the expertise of the arbitrator. Notably, neither party challenges the ability of the bankruptcy court to adjudicate the issues. This factor is neutral.

Therefore, we agree with the bankruptcy court that the balance of factors weighs in favor of denying stay relief, and there was no cause to lift the automatic stay.

**C.    Federal policy favoring arbitration does not mandate stay relief.**

Whose Dog argues that the FAA favors resolution through arbitration, which is cause to lift the automatic stay. We disagree.

As a general rule, courts favor agreements to arbitrate and enforce them to the extent possible. The Ninth Circuit has acknowledged that "a court must stay a proceeding if it is satisfied that an issue in the proceeding is arbitrable under such an agreement." *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1129 (9th Cir. 2012) (citing 9 U.S.C. § 3).

But the Ninth Circuit has also stated that, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Id.* (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). It directed that "a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Id.* at 1130 (quoting *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1021 (9th Cir. 2012)). In *Eber*, the court held that the bankruptcy court was within its discretion to deny a motion to compel arbitration because the appellants "were attempting to designate their underlying state law . . . claims as non-core, arbitrable claims, in actuality, they were seeking to arbitrate

18

dischargeability under § 523(a)(2), (4) and (6), a core bankruptcy issue." *Id.*

It instructed that

> [c]ourts must consider the Bankruptcy Code's objectives, including centralization of disputes concerning a debtor's legal obligations, and protection of debtors and creditors from piecemeal litigation. When a bankruptcy court considers conflicting policies as the bankruptcy court did here, we acknowledge its exercise of discretion and defer to its determinations that arbitration will jeopardize a core bankruptcy proceeding.

*Id.* at 1131 (citation omitted); *see also In re Thorpe Insulation Co.*, 671 F.3d at 1022 (declining to enforce an arbitration provision where the arbitration would conflict with bankruptcy policy of having the debtor's claims resolved in bankruptcy court, as well as policies of "[c]entralization of disputes concerning a debtor's legal obligations" and "protect[ing] creditors and reorganizing debtors from piecemeal litigation" (citations omitted)).

Whose Dog similarly characterizes the arbitration claims as purely state law claims, while ignoring the fact that they implicate a trustee's power to administer and sell estate assets and the resolution of claims, which are core issues under 28 U.S.C. §§ 157(b)(2)(A), (B), (N), and (O). In other words, for the reasons discussed above, the arbitration claims are "so closely intertwined with" issues of a § 363 sale and claims resolution that allowing arbitration to proceed would "conflict with the underlying purposes of the Bankruptcy Code." *In re Eber*, 687 F.3d at 1131.

**D. The bankruptcy court did not abuse its discretion when it rejected Whose Dog's bad faith filing argument.**

Finally, Whose Dog argues that stay relief was appropriate because Orchid Child filed the bankruptcy petition in bad faith. We again disagree.

The Ninth Circuit recognizes that "[t]he debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay." *Idaho v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986). "The existence of good faith depends on an amalgam of factors and not upon a specific fact. The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment." *Id.*; *see generally Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002) (discussing four factors for a finding of bad faith in the context of a dismissal of a chapter 13 case). Ultimately, "[g]ood faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." *In re Arnold*, 806 F.2d at 939.

We reject Whose Dog's position that the bankruptcy court abused its discretion. "Petitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtors. Courts that find bad faith based on two-party disputes do so where it is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 616 (9th Cir. BAP 2014) (cleaned up). The claims here implicate and were intertwined with core proceedings that must be decided in the bankruptcy court.

In any event, we agree with the bankruptcy court that there were substantial non-insider claims to be administered in the bankruptcy case: the Franchise Tax Board's unsecured claim and administrative claim, U.S. Bank's unsecured claim, and Mr. Franco's claim. It thus appears that the bankruptcy filing was intended to address Orchid Child's debts and was not attempting "unreasonably to deter and harass creditors . . . ." *In re Arnold*, 806 F.2d at 939 (quoting *Meadowbrook Investors' Grp. v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*, 30 B.R. 503, 505 (9th Cir. BAP 1983)). Whose Dog has not established otherwise.

We similarly reject Whose Dog's argument that the timing of the petition – filed during arbitration – indicates bad faith. The timing of a bankruptcy filing meant to frustrate an existing state court action can amount to bad faith. *See Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470-71 (9th Cir. 1994). However, that alone is not a dispositive factor; we have held that the bankruptcy court abused its discretion when it considered only the timing of the filing "and did not base its bad faith finding on the totality of the circumstances." *In re Ho*, 274 B.R. at 877. Additionally, "bad faith exists where the debtor's *only* purpose is to defeat state court litigation." *Id.*

In this case, the bankruptcy court did not err in finding that the timing of the bankruptcy filing did not amount to bad faith. Orchid Child represented that it was facing mounting debt and could not afford to continue with arbitration. Additionally, there was no dispute that Orchid Child was in financial distress. It was not error for the bankruptcy court to

21

find that the petition was filed for a legitimate bankruptcy purpose. We defer to its judgment.

## CONCLUSION

The bankruptcy court did not abuse it discretion in denying Whose Dog relief from the automatic stay. We AFFIRM.